Shannon Gallagher (CA Bar 24446)
2443 Fillmore Street #131
San Francisco, CA 94115
(415) 225-7571

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Evgeny Epikhin and Dmitri Redlikh )
               Plaintiffs, )
               vs. )
Game Insight North America, Game Insight, )
GIGL, Fly High Games, Game Garden, LLC, )
Yury Pomortsev and Does 1-20, )
             Defendants. )

Case No. : 3:14 cv 4383

COMPLAINT FOR COPYRIGHT INFRINGEMENT; FRAUD; CONTRIBUTORY COPYRIGHT INFRINGMENT; VICARIOUS COPYRIGHT INFRINGMEN; DECLARATORY RELIEF AND ACCOUNTING; BREACH OF CONTRACT; AND DECEPTIVE PRACTICES IN VIOLATION OF § 17200

## COMPLAINT

1.    This is an action by Evgeny Epikhin and Dmitri Redlikh to recover damages arising from copyright infringement by Game Insight, Game Insight North America, Inc., GIGL, Game Garden, LLC, Yury Pomortsev and Does 1-20, whose names have not yet been determined, and for related claims, and to enjoin the Defendants from future infringement and from causing further harm to Plaintiffs.  Plaintiffs further bring this action against FlyHigh Games, its heirs and assigns, for a judgment declaring Plaintiffs are co-authors of the gaming application commonly referred to as *Cat Story* and seeking an accounting for profits wrongfully withheld from Plaintiffs.

## THE PARTIES

2.    Dmitri Redlikh is a citizen of the Russian Federation and is the former sole shareholder of South Port Studios, LLC.

3.   Evgeney Epikhin is a citizen of the Russian Federation and, together with Dmitri Redlikh, holds the exclusive rights and title to *PussyVille*.

4.   Game Insight, a corporation with a principal place of business in Vilnius, Lithuania, is a distributor of social games and mobile games.

5.   On information and belief, Game Insight is a parent company or is otherwise affiliated with Game Insight North America.

6.   Game Insight North America is a Delaware corporation with a primary place of business in San Francisco, California.

7.   On information and belief, Game Insight is a parent company or is otherwise affiliated with GIGL.

8.   On information and belief, GIGL is distributing the application *Cat Story* through Google, Inc., whose principal place of business is in Mountain View, California.

9.   Game Insight distributes the application Cat Story through Apple, Inc.'s AppStore, whose principal place of business is in San Jose, California.

10.  Game Garden, LLC is a California limited liability company whose principal place of business is in San Francisco, California.

11.  Game Garden, LLC distributes *Cat Story* through Amazon's and Windows Mobile.

12.  FlyHigh Games is a company with its principal place of business in St. Petersburg Russia.

13.  On information and belief, FlyHigh Games is a co-author of the application *Cat Story*.

14.  The true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants sued herein as Does 1-20 are unknown to Plaintiffs, and they are therefore sued by Plaintiffs by such fictitious names (the "Doe Defendants"). Plaintiffs will seek leave of the Court to amend this Complaint to state the true names and capacities when ascertained.

## JURISDICTION

15. This Court has subject matter jurisdiction over Plaintiffs' claims for copyright infringement and related claims pursuant to 17 U.S.C. §§ 101 et seq., and 28 U.S.C. §§ 1331, 1332 and 1338(a).

16. This Court has supplemental jurisdiction over Plaintiffs' claims arising under the laws of California pursuant to 28 U.S.C. § 1367(a) because those claims are so related to Plaintiffs' claims under Federal law that they form part of the same case or controversy and derive from a common nucleus of operative fact.

17. This Court has personal jurisdiction over the Defendants, and each of them, because they have business presences within the State, have committed, or have caused others to commit on their behalves, unlawful and tortious acts both within and outside of the State of California causing Plaintiffs injury in California. Plaintiffs' claims arise, in part, from the conduct that gives rise to personal jurisdiction over Defendants.

## INTRADISTRICT ASSIGNMENT

18. Because this case is based in copyright, it may be assigned to any of the divisions of the District Court for the Northern District of California.

## VENUE

19. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400.

## BACKGROUND

20. South Port Studios, LLC ("South Port") is a Russian corporation with its principal place of business in Moscow, Russia. At all times relevant to this litigation, South Port created entertainment applications and games for online and mobile platforms.

21. In early 2012, South Port's employees conceived of an idea for a new gaming application and began working to create the same.

22. The application is a city builder game with elements of farming in which a tribe of cats are building a new life on a strange and fascinating island where players engage in countless adventures.

23. During its development, several names for the application were considered including the name "*Cat Story*."

24. The cheeky name, "*PussyVille*," was employed internally among employees and developers to refer to the application during its development.

25. Over the ensuing months, several South Port employees were assigned tasks related to the project, including development of the game concept, creation of art, code and graphics, deployment of game mechanics (game design), and development of a marketing strategy.

26. The application consisted of original audio and visual elements and art, including characters, scenery, landscapes, animated objects, and sounds, and the sequencing and resequencing of these elements. All of this new matter was wholly original and is copyrightable subject matter.

27. The application also consisted of computer code based on and derived from code created by South Port in connection with earlier application projects entitled Volshebnaya Ferma and Fairy Farm, each of which is subject to copyright protection, Federal Registration Numbers PA1758372 and PA 1758373 respectively. All of this new matter was wholly original and is copyrightable subject matter.

28. In September of 2013, a gaming application entered the market on Apple's App Store entitled *Cat Story*.

29. *Cat Story* claims to be a FlyHigh Games Game and is distributed on the App Store by Game Insight.

30. A comparison of extensive early time-stamped work created by South Port employees and secretly stored off-site beginning in 2011 to protect against misappropriation and employee or contractor intellectual-property theft makes clear that the application published commercially as *Cat Story* contains significant art, graphics, and other copyright-protected elements created by South Port employees and referred to internally as *PussyVille*.

31. Beginning in April of 2011 through December 2012, the General Director of South Port was Alexy Trushkov.

32. During his tenure, Trushkov sought guidance from, reported developments to, and generally interfaced with Yury Pomortsev, an owner of Game Garden, LLC responsible for oversight of application development.

33. Since 2011, Game Garden, LLC acted as the distributor of various South Port projects, including Fairy Farm and Fairy Kingdom, through different online distributors including Amazon, Inc. and Google, Inc.

34. From 2011 until August 2013, the four owner members of Game Garden, LLC were Yury Pomortsev and Maxim Bakanovich, Epikhin and Redlikh.

35. Over the course of 2012, South Port's resources continued to be committed to development of project, with a target release date of first half of 2013.

36. Unbeknownst to Epikhin and Redlikh, and in contravention of their contract not to compete against their joint efforts, Bakonovich and Pomortsev formed a new gaming company, Fair Play Studios, in 2012.

37. By mid-2012, Mr. Pomortsev's representations to the other owners of Game Garden, LLC regarding the *PussyVille* application became troubling. In late 2012 after months of development, he reported to South Port owner Redlikh that a third party, Dmitry Mukhin (in future d/b/a as FlyHigh Games), could assist in the development of *PussyVille* for a share in the profits of the application.

38. Pomortsev, without authority of prior consent from Epikhin or Redlikh, shared access to South Port's *PussyVille* application to FlyHigh Games.

39.     Pomortsev, without authority of prior consent from Epikhin or Redlikh, shared South Port's resources and experience from earlier South Port projects Fairy Farm and Fairy Kingdom.

40.     By the end of 2012, Pomortsev represented to Redlikh and Epikhin that South Port employees were no longer working on the *PussyVille* application but were instead devoted to other South Port projects.

41.     In a January 18, 2013 email, Pomortsev falsely represented to Epkhin and Redlikh that there was no application that had been referred to internally as *PussyVille* in development, stating that "*PussyVille* is not being developed."

42.     Pomortsev concealed from Epikhin and Redlikh that his new gaming company, Fair Play Studios, and Mukhin's company, FlyHigh Games, had secretly continued developing the application.

43.     In December 2012, South Port General Director Trushkov changed his position within South Port to a general employee working on marketing aspects of South Port's games and, on information and belief, he then began working for Pomortsev or Fair Play Studios.

44.     Over the course of the ensuing several months, Pomortsev made numerous additional false representations to Epikhin and Redlikh and engaged in other questionable activities, and significant conflict arose.

45.     By May 2013, the owners of Game Garden, LLC decided to part ways on account of these numerous difficulties.

46.     Negotiations regarding the severing of the relationship began in June of 2013 with Epikhin and Redlikh selling their interests to friends of Pomortsev and Bakanovich in September 2013.

47.      All parties were represented by counsel during the negotiations and documentation was drafted jointly.

48.     On September 9, 2013, Epikhin and Redlikh, sold their ownership interests in Game Garden, LLC.

49. Relevant sale documentation listed each and every game, application and project that was included in the sale transaction, but did not include *PussyVille*.

50. South Port did not transfer, directly or indirectly, any rights to the *PussyVille* application and related materials to Game Garden, LLC.

51. At no time did Plaintiffs authorize Defendants to reproduce, adapt, distribute, make derivative works from, or perform *PussyVille*.

52. Plaintiffs fulfilled all of their obligations in connection with any applicable documents in connection with the sale of their interests in Game Garden, LLC.

53. On August 2, 2013, the domain name www.catstorygame.com was registered by Mukhin. A true and correct copy of the registration is attached as Exhibit A.

54. On information and belief, Game Insight began distributing *Cat Story* through Apple Inc.'s App Store on September 19, 2013.

55. On information and belief, Game Insight's affiliate or subsidiary, GIGL, began distributing *Cat Story* through Google Play on January 24, 2014.

56. On information and belief, Game Garden, LLC began distributing *Cat Story* through Amazon on or about February 1, 2014.

57. On information and belief, Game Garden, LLC began distributing *Cat Story* through Windows Mobile on or about April 1, 2014.

58. On September 13, 2013, in anticipation of a restructuring of South Port, South Port transferred all rights and title to *PussyVille*, together with all related copyright rights, including the exclusive rights to any and all derivative works, to Epikhin and Redlikh.

59. Prior to commencing this action, Epikhin and Redlikh filed with the United States Copyright for copyright protection of the *PussyVille* application and related copyrightable material.

60. Prior to commencing this action, Epikhin and Redlikh filed as joint claimants, naming FlyHigh Games as co-author with the United States Copyright for copyright protection of the *Cat Story* application and related copyrightable material.

# FIRST CAUSE OF ACTION:
## COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 501
### (as to Game Garden, LLC, Game Insight, Game Insight North America, and GIGL)

61. Plaintiffs incorporate by reference as set forth in full herein the allegations contained in paragraphs 1-60 above.

62. Plaintiffs, as assignees of South Port and at all times relevant hereto, have been the author, creator and owner of *PussyVille* as assignees of South Port Studios of all of the exclusive rights under United States copyright law and have applied for a valid Copyright Registration in connection therewith.

63. Plaintiffs, as assignees of South Port and at all times relevant hereto, have been a co-author, creator and owner of *Cat Story*, with right to all of the exclusive rights under United States copyright, and have applied for a valid Copyright Registration as a co-author with FlyHigh Games in connection therewith.

64. Plaintiffs' registrations of the *PussyVille* and *Cat Story* applications with the United States Copyright Office are afforded the presumption of copyright validity.

65. Among the exclusive rights granted to the Plaintiffs under the Copyright Act are the exclusive rights to reproduce, distribute to the public and create derivative works of a Copyrighted work.

66. A reasonable opportunity for further investigation and discovery is likely to provide evidentiary support that Defendants have infringed Plaintiffs' copyrights in *PussyVille* by reproducing, creating derivative works and distributing copies of the copyrighted work in violation of Plaintiffs' exclusive rights under 17 U.S.C. Section 106.

67. A reasonable opportunity for further investigation and discovery is likely to provide evidentiary support that Defendants have infringed Plaintiffs' copyright rights in *Cat Story* by reproducing, creating derivative works and distributing copies of the copyrighted work in violation of Plaintiffs' exclusive rights under 17 U.S.C. Section 106.

68. Defendants had access to the copyrightable material created by South Port's employees.

69. There is substantial similarity between *PussyVille* and *Cat Story* to evidence copyright infringement.

70. Defendants have willfully infringed Plaintiffs' rights by reproducing and distributing *Cat Story* to the public.

71. Defendants knew or should have known of Plaintiffs' rights and interests to the infringed works and knew their actions constituted copyright infringement.

72. Defendants conduct is intentional and willful within the meaning of the Copyright Act.

73. As a result of their wrongful conduct, Defendants have damaged Plaintiffs and are liable to Plaintiffs for copyright infringement. Plaintiffs have suffered, and will continue to suffer, substantial harm, including but not limited to damage to their business reputations and goodwill.

WHEREFORE, Plaintiffs are entitled to damages as set forth below as a result of Defendants' infringement.

## SECOND CAUSE OF ACTION
## FRAUD
(as to Defendant Pomortsev)

74. Plaintiffs incorporate paragraphs 1 through 73 as though fully set forth herein.

75. Pomortsev was a trusted business partner of Plaintiffs.

76. In connection with his role in distributing South Port's products, Pomortsev was entrusted with access to South Port's business strategies, trade secrets ,and product development and he had regular contact with South Port's employees essential to the development of the project internally referred to as *PussyVille*.

77. Pomotsev abused this trust and used his knowledge to falsity information and take for his personal gain that which belongs to South Port.

78. Despite owing duties of loyalty and honesty to his business partners Epikhin and Redlikh, Pomortsev knowlingly and intentionally misrepresented information about the development of the *PussyVille* application to them.

79. Pomortsev knew that South Port employees, including Managing Director Trushkov, expended and had expended considerable effort on the *PussyVille* application project and had been paid for those efforts.

80. Through his access to South Port's key employees and information, Pomortsev knew the application internally referred to as *PussyVille* was a well-designed application that had tremendous promise.

81. Pomortseve knew extensive artwork, graphics and other copyrightable materials, as well as non-copyrightable materials, were developed by South Port employees.

82. Pomortsev made, coordinated and encouraged others to make many misrepresentations to Plaintffs to assist with his efforts to steal the *PussyVille* application from South Port and to have Epikhin and Redlikh bought out of their shares in Game Garden, LLC, the distributor of South Port's applications.

83. Specifically, in mid-2012, Pomortsev reported to Plaintiffs he had negotiated with another Russian application developer, Mukhin, about collaborating on *PussyVille*.

84. Thereafter, Pomortsev made numerous misrepresentations about the development of *PussyVille* to Plaintiffs, including statements that the characters created and animated by South Port employees were inadequate and needed to be redone extensively by FlyHigh Games.

85. A comparison of the animated characters in the *Cat Story* game are in several instances nearly identical to or identical to those initially created by South Port's employees, months prior to the purported involvement of FlyHigh Games.

86. After progressively discrediting the South Port work over the span of a few months, in a January 18, 2013 email, Pomortsev stated that no development of the *PussyVille* application was no longer being done by South Port and that there was no value to the project.

87. At the time Pomortsev made these and other misrepresentations, and encouraged South Port's then Managing Director to make these representations, they knew or should have known that each of the misrepresentations was false.

88. Pomortsev intended for Plaintiffs to rely on these misrepresentations.

89. Plaintiffs did believe the misrepresentations and relied on the same in believing that there was little or no value in the *PussyVille* project in agreeing to divest of their ownership interests in Game Garden, LLC in September of 2013.

90. Plaintiffs believed in Defendants misrepresentations and, therefore, *PussyVille* was not included among the assets or interests sold in connection with their divestment of their interests in Game Garden, LLC.

91. Plaintiffs believed Defendants misrepresentations and, therefore, in connection with their divestment of their interests in Game Garden, LLC, sought and received no compensation for *PussyVille*.

92. Plaintiffs believed in Defendants misrepresentations and, therefore, South Port agreed to transfer for good and valuable consideration all rights, including all of the exclusive Copyright rights to the *PussyVille* application to Epikhin and Redlikh, who planned to develop the application at their own expense.

93. Despite the misrepresentations to Plaintiffs, in August of 2013, Defendants registered for the domain name www.catstorygame.com.

94. According to records from the Apple App Store, on September 19, 2013, Defendant Game Insight or Game Insight North America began distributing the application *Cat Story* via the App Store.

95. A comparison of extensive early time-stamped work created by South Port employees makes clear that the application published commercially as *Cat Story* contains significant work done by South Port employees and internally referred to as *PussyVille*.

96. In February of 2014, Game Garden, LLC began distributing the *Cat Story* application on Amazon.

97. In April of 2014, Game Garden, LLC began distributing the *Cat Story* application through Windows Mobile.

98. The *Cat Story* application being distributed by the Apple App Store, Google, Amazon and Windows Moblie is substantially similar to and derived from the *PussyVille* application developed by South Port.

99. As a direct and proximate cause of Defendants' misrepresentations, Plaintiffs have been harmed financially.

WHEREFORE, Plaintiffs pray for judgment against Pomortsev as set forth below.

THIRD CAUSE OF ACTION

CONTRIBUTORY COPYRIGHT INFRINGEMENT

(as to Game Garden, LLC, Game Insight, Game Insight North America, and GIGL)

100. Plaintiffs incorporate by reference as set forth in full herein the allegations contained in paragraphs 1-99 above.

101. Numerous entities and individuals have directly infringed Plaintiffs' copyrighted works.

102. Defendants induced, caused, and materially contributed to the infringing acts of others by assisting, inducing and allowing others to reproduce and distribute Plaintiffs' works.

103. Defendants had knowledge of the infringing acts relating to Plaintiffs' copyrighted works.

104.   The acts and conduct of Defendants, as alleged in this Complaint, constitute contributory copyright infringement.

WHEREFORE, Plaintiffs pray for judgment against Defendants as set forth below.

## FOURTH CAUSE OF ACTION
## VICARIOUS COPYRIGHT INFRINGEMENT
(as to Game Garden, LLC, Game Insight, Game Insight North America, and GIGL)

105.   Plaintiffs incorporate by reference as set forth in full herein the allegations contained in paragraphs 1-104 above.

106.   Numerous entities and individuals have directly infringed Plaintiffs' copyrighted works.

107.   Defendants induced, caused, and materially contributed to the infringing acts of others by assisting, inducing and allowing others to reproduce and distribute Plaintiffs' works.

108.   Defendants had knowledge of the infringing acts relating to Plaintiffs' copyrighted works.

109.   The acts and conduct of Defendants, as alleged in this Complaint, constitute vicarious copyright infringement.

WHEREFORE, Plaintiffs pray for judgment against Defendants as set forth below.

## FIFTH CAUSE OF ACTION
## DECLARATIOIN OF COPYRIGHT OWNERSHIP AND
## DEFENDANT'S DUTY TO ACCOUNT
(against Defendant FlyHigh Games)

110.   Plaintiffs incorporate by reference as set forth in full herein the allegations contained in paragraphs 1-109 above.

111. Plaintiffs were properly assigned all right, title and interest to *PussyVille* and any copyrightable material therein.

112. Plaintiffs are the rightful owners of all rights title and interest to *PussyVille*.

113. *Cat Story* is a derivative work of *PussyVille* and Plaintiffs seek a judgment declaring that Plaintiffs are the owners of copyright and publishing rights in *Cat Story* and that Defendant FlyHigh Games is not the only author of *Cat Story*.

114. FlyHigh Games collaborated on the *Cat Story* application with South Port employees and later benefitted by conspiring with Bakonovich and Pomortsev to steal the application from South Port.

115. *Cat Story* is a derivative work of *PussyVille*, and includes artwork, text and computer code from *PussyVille*, and is being sold and distributed as a work created solely by FlyHigh Games without any remuneration to Plaintiffs.

116. Plaintiffs are joint owners of *Cat Story* and, as such, have the right to publish and otherwise exploit *Cat Story,* and FlyHigh Games has a duty to account to Plaintiffs for all profits arising, directly or indirectly, from Defendants' exploitation of any copyright in the works both inside and outside of the United States.

117. Plaintiffs seek a judgment declaring they are 50% owner of all Copyright rights and publishing rights to *Cat Story*, and that Defendants have a duty to account to Plaintiffs for all profits arising directly or indirectly from Defendants' exploitation of any copyright in the works.

WHEREFORE, Plaintiffs pray for judgment as set forth below.

SIXTH CAUSE OF ACTION

BREACH OF CONTRACT

(as to Bakonovich and Pomortsev)

118. Plaintiffs incorporate by reference as set forth in full herein the allegations contained in paragraphs 1-117 above.

119. Defendants Bakonovich and Pomortsev entered into the September 9, 2013 Sales Agreement whereby Plaintiffs divested their ownership interests to Game Garden, LLC, the distributor of South Port's products.

120. Defendants Bakonovich and Pomortsev have breached the Settlement Agreement by asserting claims of rights and seeking financial benefit from any of the materials of PussyVille and/or its derivative work, Cat Story.

121. The Sales Agreement enumerates only those works subject to transfer and does not include PussyVille or its derivative work, Cat Story.

122. Plaintiffs are entitled, by way of the transfer of right from South Ports, to employ all of the exclusive rights vested in a copyright holder, including the use, distribute, and sell copies and the right to create derivative works.

123. Plaintiffs have been, and continue to be harmed on account of Defendants' breach of the terms of the Sale Agreement entered into by the Parties.

WHEREFORE, Plaintiffs pray for judgment as set forth below.

## SEVENTH CAUSE OF ACTION
### DECEPTIVE PRACTICES IN VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200
**(Against All Defendants)**

124. Plaintiffs incorporate the allegations of paragraphs 1 through 123 as though fully set forth herein.

125. Plaintiffs asserts their claim of unfair competition under California Business & Professions Code § 17200, et seq. for their own interests, and not for the benefit of the general public.

126. Plaintiffs have suffered injury in fact and have lost money and/or property as a result of Defendants' unfair business practices.

127.    Defendants' conduct amounts to unlawful, fraudulent and unfair business practices under California's Business & Professions Code.

128.    Defendants knowingly and intentionally deceived Plaintiffs about the existence and value of PussyVille and the Cat Story application.

129.    By engaging in this deception, Defendants violated California statutory and common law, including, without limitation, the provisions of California law noted above.

130.    Plaintiffs seek restitution of all amounts of money that the Defendants, and any of them, received on account of their wrongful conduct.

WHEREFORE, Plaintiffs pray for judgment against Defendants as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray as follows:

1.    For a temporary restraining order, preliminary and permanent injunction, enjoining Defendants and all persons acting in concert with them from making, performing, reproducing, adapting, distributing, displaying, advertising or offering for sale any materials substantially similar to the copyrighted work, and to deliver to the Court for destruction of all such materials and means for producing the same in Defendants' possession or control.

2.    For actual damages and Defendants' profits in an amount in excess of $1,000,000 to be determined at trial, plus interest.

3.    For statutory damages pursuant to 17 U.S.C. §504 (c), for all works, including all derivative works of *Cat Story*, initially published within applicable time limits.

4.    For a judgment declaring that Plaintiffs are owners of the copyright and publishing rights by way of an assignment and transfer of interest in all of the exclusive rights of copyright from SouthPort to Plaintiffs, and that Plaintiffs are co-authors and 50% owner of the rights to *Cat Story*, and that Defendant's claims of sole ownership are barred.

5. For Defendants' profits attributable to the infringement, pursuant to 17 U.S.C. §504 (b), including and accounting of and a constructive trust with respect to such profits.

6. For restitution of any and all amounts Defendants received on account of their wrongful and/or deceptive conduct.

7. For their reasonable attorneys' fees and costs pursuant to 17 U.S.C. §505 and otherwise according to law.

8. For prejudgment interest according to law.

9. For such other and further relief as the Court deems just and proper.

Dated September 23, 2014  *Shannon Gallagher*

Shannon Gallagher, Esq.
The Law Offices of Shannon Gallagher
2443 Fillmore Street #131
San Francisco, CA 94115

**EXHIBIT A**

