<u>Table of Contents</u>

| | | |
|---|---|---|
| I. | Introduction | 1 |
| II. | Background | 2 |
| III. | Argument | 5 |
| | A. Legal Standard for a 12(b)(6) Motion | 5 |
| | B. The Complaint Sufficiently Pleads the Claim for Vicarious Copyright Infringement Against the Distributor Defendants. | 6 |
| | C. Plaintiffs Have Stated a Sufficient Claim of Contributory Copyright Infringement Against the Distributor Defendants. | 9 |
| | D. Plaintiffs Claim Under California Business & Professions Code § 17200, et seq. | 11 |
| IV. | Conclusion | 12 |

## Table Of Authorities

*A&M Records, Inc. v. Napster Inc.*, 239 F.3d 1004, 1024 (9th Cir. 2001)  5,6,9

*Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009)  5,6

*Bell Atl. Corp. v. Twombly*, 50 U.S. 544, 552 (2007)  5

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,* 20 Cal. 4th 163, 180 (1999).  12

*Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir. 1997)  12

*Luvdarts, LLC v. AT&T Mobility, Inc.,* 710 F.3d 1068, 1071 (2013)  6,9

*Mayo v. Gomez,* 32 F.3d 1382, 1384 (9th Cir. 1994)  5,11

*Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F.3d 1424, 1435 (9th Cir. 1995)  9

*Perfect 10 v. Visa Int'l Service Ass'n,* 494 F.3d 788, 798 (9th Cir. 2007)  11

*Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  12

*Sony Corp. of Am. V. Universal city Studios*, 464 U.S. 417, 434 (1984)  6

*Starr v. Baca,* 652 F.3d 1202, 1216, 1239 (9th Cir. 2011)  6,10,12

Fed. R. Civ. P. 8(a)(2).  5

Fed. R. Civ. P. 12(b)(6)  5, 6

17 U.S.C 106  2. 5, 9

Shannon Gallagher (CA Bar 24446)
2443 Fillmore Street #131
San Francisco, CA 94115
(415) 225-7571

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Evgeny Epikhin and Dmitri Redlikh

    Plaintiffs,

vs.

Game Insight North America, Game Insight, GIGL, Fly High Games, Game Garden, LLC, Yury Pomortsev and Does 1-20,

    Defendants.

Case No. : 5:14-cv-0438-LHK

OPPOSITION TO MOTION TO DISMISS COUNTS FOR CONTRIBUTORY COPYRIGHT INFRINGMENT; VICARIOUS COPYRIGHT INFRINGMEN; AND DECEPTIVE PRACTICES IN VIOLATION OF § 17200

Date:   May 14, 2015
Time:  1:30 p.m,
Court Room:  280 S. First St. San Jose, Ca 95113

MEMORANDUM OF POINTS & AUTHORITIES
IN OPPOSITION TO MOTION TO DISMISS

## I. Introduction

On September 29, 2014, Plaintiffs filed suit alleging copyright infringement and related claims. On January 21, 2015, Game Insight and Game Garden, LLC, the Distributor Defendants, filed a joint Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants ask the Court at this early stage to dismiss three counts of the Plaintiffs' complaint as inadequate. Specifically, they ask the Court to dismiss claims for contributory copyright infringement; vicarious copyright infringement; and violation of California Business & Ethics Code Section 17200. But Plaintiffs need only show that a claim is plausible and the pleadings, when taken as a whole, meet this standard. Plaintiffs satisfy the liberal notice pleading standard of Rule 8 (a) and additional details will be clarified through discovery.  Defendants' motion therefore, should be denied.

II.     **Background**

Plaintiffs are the copyright owners of exclusive rights to certain copyrighted materials. Complaint ¶¶ 59-60. Among the exclusive rights granted under the Copyright Act, 17 U.S.C. §§ 101 *et seq.*, are the right to reproduce the copyrighted materials and to distribute them to the public.  17 U.S.C. § 106.  Plaintiffs allege that the Defendants actions constitute infringement of Plaintiffs' copyright and exclusive rights under copyright.  Comp. ¶ 70. Since filing the complaint, the Plaintiffs have received their certificate of registration for *Cat Story* from the United States copyright office, Registration No. TXu 1-912-978. *See* Exhibit A to the Declaration of Shannon P. Gallagher, attached. Accepting the pleadings as true, the *Cat Story* application contains significant art, graphics and other copyrightable material created by South Port; these rights were properly assigned to Plaintiffs; and these rights are infringed by the *Cat Story* application distributed by the Distribution Defendants. *See* Comp. ¶¶ 30, 58 and 70.

Plaintiffs allegations specific only to Game Insight and Game Garden, LLC include that:

1.      Game Insight, a corporation with a principal place of business in Vilnius, Lithuania, is a distributor of social games and mobile games. Comp. ¶ 4.

2.      On information and belief, Game Insight is a parent company or is otherwise affiliated with Game Insight North America. Comp. ¶ 5.

3.      Game Insight North America is a Delaware corporation with a primary place of business in San Francisco, California. Comp. ¶ 6.

4.      On information and belief, Game Insight is a parent company or is otherwise affiliated with GIGL. Comp. ¶ 7.

5.      On information and belief, GIGL is distributing the application *Cat Story* through Google, Inc., whose principal place of business is in Mountain View, California. Comp. ¶ 8.

6.      Game Insight distributes the application Cat Story through Apple, Inc.'s AppStore, whose principal place of business is in San Jose, California. Comp. ¶ 9.

7.      Game Garden, LLC is a California limited liability company whose principal place of business is in San Francisco, California. Comp. ¶ 10.

8. Game Garden, LLC distributes *Cat Story* through Amazon's and Windows Mobile. Comp. ¶ 11.

9. In September of 2013, a gaming application entered the market on Apple's App Store entitled *Cat Story*. Comp. ¶ 28.

10. *Cat Story* claims to be a FlyHigh Games Game and is distributed on the App Store by Game Insight. Comp. ¶ 29.

11. On information and belief, Game Insight began distributing *Cat Story* through Apple Inc.'s App Store on September 19, 2013. Comp. ¶ 54.

12. On information and belief, Game Insight's affiliate or subsidiary, GIGL, began distributing *Cat Story* through Google Play on January 24, 2014. Comp. ¶ 55.

13. On information and belief, Game Garden, LLC began distributing *Cat Story* through Amazon on or about February 1, 2014. Comp. ¶ 56.

14. On information and belief, Game Garden, LLC began distributing *Cat Story* through Windows Mobile on or about April 1, 2014. Comp. ¶ 57.

The Complaint sets out the following additional relevant background facts: South Port Studios, LLC ("South Port") is a Russian corporation that created entertainment applications and games for online and mobile platforms. Comp. ¶ 20. In early 2012, South Port's employees conceived of an idea for a new city builder game application with elements of farming in which a tribe of cats are building a new life on a strange and fascinating island. Comp. ¶ 22. The cheeky name, "*PussyVille*," was employed internally during development of the game. Comp. ¶ 24. Over time, the game concept, art, code and graphics, game mechanics (game design), and a marketing strategy were developed. Comp. ¶ 25. The application consisted of original audio and visual elements and art, including characters, scenery, landscapes, animated objects, and sounds, and the sequencing and resequencing of these elements. Comp. ¶ 26.

During 2012, South Port's resources continued to be committed to development of the *PussyVille* project, with a target release date in early 2013. Comp. ¶ 35.  Manager Yury Pomortsev later falsely represented that South Port employees were no longer working on the *PussyVille* application.  Comp. ¶ 40. But Pomortsev and his partner, Bakanovich, working with FlyHigh Games, secretly continued developing the application using South Port resources and employees. Comp. ¶ 42. By May 2013, the owners of Game Garden, LLC decided to part ways, and Redlikh and Epikhin sold their interests in September 2013. Comp. ¶  48.  In connection with that sale, South Port did not transfer, directly or indirectly, any rights to the *PussyVille* application or related materials to Game Garden, LLC. Comp. ¶ 50.  Rather, South Port transferred all rights in *PussyVille* to Plaintiffs by written agreement. Comp. ¶ 58.  At no time did Plaintiffs authorize Defendants to reproduce, adapt, distribute, make derivative works from, or perform *PussyVille*. Comp. ¶ 51.

On August 2, 2013, the domain name www.catstorygame.com was registered by Mukhin of FlyHigh Games. Comp. ¶ 53.   In September of 2013, a gaming application entered the market on Apple's App Store entitled *Cat Story*.  Comp. ¶ 28.  *Cat Story* claims to be a FlyHigh Games Game and is distributed on the App Store by Game Insight.  Comp. ¶ 29.  A comparison of extensive early time-stamped work created by South Port employees makes clear that the application published commercially as *Cat Story* contains significant art, graphics, and other copyright-protected elements created by South Port employees and referred to internally as *PussyVille*.  Comp. ¶ 30.

On information and belief, Game Insight began distributing *Cat Story* through Apple Inc.'s App Store on September 19, 2013. Comp. ¶ 54.  On information and belief, Game Insight's affiliate or subsidiary, GIGL, began distributing *Cat Story* through Google Play on January 24, 2014. Comp. ¶ 55.  On information and belief, Game Garden, LLC began distributing *Cat Story* through Amazon on or about February 1, 2014. Comp. ¶ 56.  On information and belief, Game Garden, LLC began distributing *Cat Story* through Windows Mobile on or about April 1, 2014. Comp. ¶ 57.

Plaintiffs' registration of *Cat Story* with the United States Copyright Office is afforded the presumption of copyright validity. Among the exclusive rights granted to the Plaintiffs under the Copyright Act are the exclusive rights to reproduce, distribute to the public, and create derivative works of a Copyrighted work. 17 U.S.C. Section 106.

### III.     Argument

#### A. Legal Standard for a 12(b)(6) Motion

A Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) permits a complaint to be dismissed for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 50 U.S. 544, 552 (2007). Rule 12(b)(6) is read in conjunction with Rule 8(a) which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In considering a motion to dismiss, the Court must consider the complaint in its entirety, accepting all factual allegations in the complaint as true and construing the allegations in the light most favorable to the Plaintiffs. *Mayo v. Gomez,* 32 F.3d 1382, 1384 (9th Cir. 1994).

As explained by the *Twombly* Court, "we do not require heightened fact pleadings of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 556)). The Ninth Circuit summarized the standard, holding "[t]he standard at this stage of the litigation is not that plaintiff's explanation must be true or even probable. The factual allegations of the complaint need only 'plausibly suggest an entitlement to relief.'" *Starr v. Baca,* 652 F.3d 1202, 1216, 1239 (9th Cir. 2011) (quoting *Iqbal,* 129 S.Ct. at 1951). "As the Court wrote in *Twombly,* Rule 8(a) 'does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' to support the allegations'" *Starr,* 652 F.3d at 1239 (quoting *Twombly,* 550 U.S. at 556). "In all cases, evaluating a complaint's

plausibility is a 'context-specific' endeavor that requires courts to 'draw on . . . judicial experience and common sense." *Starr v. Baca,* 652 F.3d 1202, 1216 (9th Cir. 2011).  As to each of the counts, Plaintiffs satisfy this standard.

### B. The Complaint Sufficiently Pleads the Claim for Vicarious Copyright Infringement Against the Distributor Defendants.

While the Copyright Act does not explicitly hold a person liable for a third person's infringement, principles of third-party liability have emerged and developed from common law. *See Luvdarts, LLC v. AT&T Mobility, Inc.,* 710 F.3d 1068, 1071 (2013) (citing *Sony Corp. of Am. V. Universal city Studios*, 464 U.S. 417, 434 (1984)). "Vicarious copyright liability is an 'outgrowth' of respondeat superior." *Id.* at 1071 (quoting *A&M Records, Inc. v. Napster Inc.*, 239 F.3d 1004, 1024 (9th Cir. 2001).  Vicarious copyright liability exists where the defendant had (1) the "right and ability to supervise the infringing activity"; and (2) "a direct financial interest" in the activity.  *Luvdarts,* 710 F.3d 1071 (citing *A&M Records, Inc. v. Napster Inc.*, 239 F.3d 1004, 1024 (9th Cir. 2001)).   A lack of knowledge of the primary actors' infringing conduct is not required.

Game Insight has the requisite authority to conduct due diligence, and made affirmative representations to Google Play and the AppStore regarding the ownership of all intellectual property related to *Cat Story*. Gallagher Decl. at ¶ 6 and Ex. E. Since the complaint was filed, Game Insight has failed to stop the infringement and continues to distribute *Cat Story* through Apple's AppStore and Google Play to end users who infringe Plaintiffs' copyright rights. Comp. ¶¶ 28, 54-55.  The *Cat Story* application is advertised on Game Insight's website. *See* Gallagher Decl. Ex. D.

Not only do these Distributor Defendants have the ability to supervise the infringing conduct, but in distributing the *Cat Story* application through various distribution channels, they facilitate infringing use by hundreds of thousands of end users.  *See, for example,* Gallagher Decl. Comp. ¶ 13 and Ex.  L, showing between 100,000-500,000 downloads of the *Cat Story*

application on Google Play alone.  At the same time, Defendants warrant both to the end users of the infringing application and the distribution platforms that they own all of the relevant intellectual property, including all copyrighted material, and that there is no infringing material contained within the application. For example, in order to distribute *Cat Story* through Google Play, GIGL was required to enter Google Play's Developer Distribution Agreement, a copy of which is attached as Gallagher Decl. ¶ 6 and Ex. E.  The Agreement defines "Developer or You" as "Any person or company who is registered and approved by the Market to distribute Products in accordance with the terms of this Agreement." Gallagher Decl. Ex. E at Definitions. Per this Agreement, Google Play will "display and make Products available for download and purchase by users." *Id.* at 2.1.  In connection with the same, Game Insight represents, "You represent and warrant that you have all intellectual property rights, including all necessary patent, trademark, trade secret, copyright or other proprietary rights, in and to the Product. If You use third-party materials, You represent and warrant that you have the right to distribute the third-party materials in the Product. You agree that You will not submit material to Market that is copyrighted, protected by trade secret or otherwise subject to third party proprietary rights, including patent, privacy and publicity rights, unless You are the owner of such rights or have permission from their rightful owner to submit the material." *Id*. at 5.5. Game Insight, therefore, has the right and ability to supervise the infringing use of Plaintiffs' copyrighted material in connection with its distribution of the *Cat Story* application on Apple's AppStore and Google Play.

It is also clear that Game Insight has a direct financial interest in the infringing activity.  As shown on Game Insight's website, www.Game-Insight.com, Game Insight holds itself out as "one of the most successful players in the international mobile gaming industry. The company continues to aspire to become a leading game developer and publisher in the freemium games category worldwide." *Gallagher Decl.* Ex. F. There is also the payment agreement contained, for example, in the Google Play Developer Distribution Agreement:  "You are the merchant of record for Products you sell through the Store." Gallagher Decl. ¶ 7 and Ex. E at 3.3.  Although

an end user may download the application from Google Play, the AppStore, Amazon or Windows Mobile free of charge, the application is a typical "freemium" application, replete with in-app purchase options. Gallagher Decl. ¶ 8 and Ex. G.

Defendant Game Garden, LLC, distributes *Cat Story* through both Amazon and Windows Mobile. *See* Comp. ¶¶ 56-57. In connection with the same, it has the ability to supervise the infringing conduct. For example, Game Garden, LLC agreed to Amazon's App Distribution and Services Agreement in connection with distributing *Cat Story* through Amazon. Gallagher Decl. ¶ 9 and Ex. H. In connection with the same, Game Garden, LLC represented that it had the "full right, power, and authority to enter into and fully perform this Agreement." Gallagher Decl. Ex. H at 8(a). It further represented that the "sale or distribution of the Content as authorized by this Agreement" would not "violate or infringe any intellectual property, proprietary, or other rights of any person or entity (including contract rights, copyrights…)." *Id*. at 8(d). Thus, Game Garden, LLC not only had the ability and right to supervise the infringing conduct, it made affirmative representations in connection with the distribution of *Cat Story* that it had exercised that authority.

Game Garden, LLC also receives any payments for the sale and distribution of the application through Amazon and Windows Mobile. *See* Gallagher Decl. ¶ 9 and Ex. H at 1(b) and (d). It is clear therefore that defendant Game Garden, LLC has both the requisite authority and financial interest in the infringing activities to be held vicariously liable for the infringement of Plaintiff's copyright rights.

It is also true that Game Insight may be liable for vicarious copyright infringement in connection with end users' infringing activities conducted through the Amazon and Windows Mobile platforms. Distribution through those platforms is done by Game Garden, LLC. Comp. ¶¶ 11, 56-57. In connection with those distribution channels, however, the Game Insight's logo is displayed on the home page of the *Cat Story* application. *See* Gallagher Decl. ¶¶ 10-11 and Exs. I and J. As a leading "developer and publisher" of freemium games, including *Cat Story*, Game Insight receives a direct financial benefit from the infringing activities that take place through the

Amazon and Windows Mobile platforms. Gallagher Decl. ¶ 7 and Ex. F; *A&M Records, Inc. v. Napster Inc.*, 239 F.3d 1004, 1024 (9th Cir. 2001).

As will be further proven through discovery, the Distributor Defendants have both the requisite ability to supervise the infringing activity and substantial financial interests served by the infringing activity. While these Distributor Defendants may claim they lacked knowledge of the infringing activities, knowledge is not relevant in assessing whether they are liable for vicarious copyright infringement. Plaintiffs have met their burden as to the defendants in showing both the requisite authority and financial interest. The claim for vicarious copyright infringement, therefore, should not be dismissed.

### C. Plaintiffs Have Stated a Sufficient Claim of Contributory Copyright Infringement Against the Distributor Defendants.

Section 106 of the Copyright Act not only gives the copyright owner the exclusive rights to reproduce and distribute a copyrighted work, but also to authorize others to reproduce and distribute the work. *See* 17 U.S.C. 106. Contributory copyright infringement is premised on such authorization. Liability for contributory copyright infringement attaches where the defendants "(1) knew of the direct infringement; and (2) they either induced, caused, or materially contributed to the infringing conduct." *Luvdarts, LLC*, 710 F.3d at 1072.

To satisfy the knowledge prong of this test, the defendants must have more than a "generalized knowledge" of "the possibility of infringement." *Id.* While discovery has not yet commenced, the circumstances and evidence as pled suggest the Distributor Defendants possessed more than just generalized knowledge of the possibility of infringement. In the case of Game Garden, LLC, knowledge can be imputed to the corporate entity, especially in a case such as this where Pormotsev's knowledge was conveyed to another corporate officer, such as Bakonovich. *See Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F.3d 1424, 1435 (9th Cir. 1995). Moreover, taking the allegations in the Complaint as true, owners Pormortsev and Bakanovich knowingly represented to Plaintiffs that South Port's *Cat Story* application was no longer in

development (Comp. ¶ 40); secretly formed a new gaming company, Fair Play Studios, in 2012 during the time South Port was developing *PussyVille* (Comp. ¶ 35, 36); shared access to *PussyVille* with FlyHigh Games (Comp. ¶ 38); and collaborated with FlyHigh Games to create the *Cat Story* application and distribute it. (Comp. ¶ 42). These allegations show that Game Garden, LLC both knew of the direct infringement and caused or materially contributed to it.

As to Game Insight, the Complaint alleges that Game Insight began distributing *Cat Story* on the AppStore on September 19, 2013. Comp. ¶¶ 28, 54. This is a mere 6 days after Plaintiffs sold their interests in Game Garden, LLC. Comp. ¶ 58. For over 2 years, Game Garden, LLC had been the de facto distributor for South Port's games, not a game developer seeking others to distribute its own games. Comp. at 33. It is here that Plaintiffs ask the Court to evaluate the plausibility of Game Insight's knowledge drawing on "judicial experience and common sense." *Starr v. Baca,* 652 F.3d at 1216. Significant publically available material illustrates the interconnectedness of these parties. On the Amazon website, for example, *Cat Story* is described as developed by Game Garden, LLC. Gallagher Decl. Ex. I. On the Windows Mobile website, there is a link to www.catstorygame.com, on which the Game Insight logo is displayed. Gallagher Decl. Ex. J. The www.catstorygame.com website has direct links to download the application through both the AppStore and Google Play, and both of these versions of the application are distributed by Game Insight. Gallagher Decl. Ex. K. Similarly, on www.catstorygame.com it shows "Contact for press: pr@game-insight.com. *Id.* On Windows Mobile, the support contact is listed as "support.winstore@catstorygame.com. Gallagher Decl. Ex. J. Game Garden, LLC is directing people on Windows Mobile, for which it is the distributor of *Cat Story,* to contact Game Insight about their application. What company would allow an unrelated party to field its press inquiries for it? As these publicly available documents show, and discovery will no doubt prove, there is a clear connection between the Game Insight and Game Garden, LLC.

Plaintiffs also successfully plead that the Distributor Defendants, and all of them, induced, caused, or materially contributed to the infringement of Plaintiff's copyright rights. The

Distributor Defendants citation to *Visa* is not persuasive. In *Perfect 10 v. Visa,* the Court found that "Perfect 10 alleges no 'affirmative steps taken to foster infringement' and that there were "no facts suggesting that Defendants promoted their payment system as a means to infringe." *Perfect 10 v. Visa Int'l Service Ass'n,* 494 F.3d 788, 798 (9th Cir. 2007). Unlike the Distributor Defendants here, the *Visa* defendants were not found to have no "direct connection to that infringement." *Id*. at 796. Specifically, the Court found the *Visa* defendants "in no way assist or enable Internet users to locate infringing material, and they do not distribute it." *Id*., 494 F.3d at 797 (emphasis added).

Taking the allegations of the complaint as true, the Distributor Defendants do distribute the infringing material in that they distribute the *Cat Story* application to end users through the AppStore, Amazon, Google Play and Windows Mobile platforms. The Distributor Defendants, therefore, are directly connected to the infringement of Plaintiffs' copyright rights and materially contribute to the end users' infringement. *Id.*; Comp. ¶¶ 28, 54-57, 30, 68-71.

Defendants suggest that Plaintiffs' claim for contributory infringement is somehow restricted to the allegations in Paragraphs 102 and 103 of the Complaint which directly address the issue of contributory infringement. This is not the case. The complaint must be taken as a whole, with all well-pled facts considered. *See Mayo v. Gomez,* 32 F.3d at 1384.

Accordingly, Plaintiffs have satisfied both prongs of the test for contributory infringement and the claim should not be dismissed.

**D. Plaintiffs Claim Under California Business & Professions Code § 17200, et seq.**

Plaintiffs assert a claim of unfair competition under California Business & Professions Code § 17200, et seq. for lost money and/or property as a result of Defendants' unfair business practices. California's Unfair Competition Law prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Section 17200 "borrows violation of other laws and treats the as unlawful

practices that the unfair completion law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,* 20 Cal. 4th 163, 180 (1999).

The Distributor Defendants move to dismiss this claim as to these defendants on the ground that the claim is directed towards activities covered by the Copyright Act and is therefore preempted. Motion at 7:1-10. In the event, however, that the Court agrees to dismiss the copyright-related claims as to the Distributor Defendants, Plaintiffs seek leave to amend their 17200 claim.

### IV. Conclusion

Plaintiffs' claims for vicarious copyright infringement and contributory copyright infringement are plausible as to each of the Distributor Defendants. The question at this early stage of litigation is not whether the plaintiffs "will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims" asserted. *Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir. 1997) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Plaintiffs here should be so entitled.

Plaintiffs' pleadings include that Game Insight is a distributor of social games and mobile games and that Game Insight and its affiliate distribute the application *Cat Story* through Google, Inc., and Apple, Inc.'s AppStore. Plaintiffs pleadings also include that Game Garden, LLC distributes *Cat Story* through Amazon and Windows Mobile. The Distributor Defendants have notice that these secondary infringement claims are directed against them because they are wrongfully violating the Plaintiffs' copyrights and the exclusive rights to reproduce and distribute by reproducing and distributing the *Cat Story* application to end users through various online platforms. The claims should survive the Distributor Defendants' Motion to Dismiss

because Plaintiffs have alleged facts which, taken as true, render their allegations plausible. *See*

*Starr,* 652 F.3d at 1216.

Dated: February 3, 2015        *Shannon P. Gallagher*
                               Shannon P. Gallagher (Bar No. 24446)
                               Attorney for Plaintiffs

                               Law Offices of Shannon Gallagher, PC
                               2443 Fillmore Street Box 131
                               San Francisco, California 94115
                               (415) 225-7571