UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| EVGENY EPIKHIN and DMITRI REDLIKH,<br><br>            Plaintiffs,<br><br>      v.<br><br>GAME INSIGHT NORTH AMERICA, et al.,<br><br>            Defendants. | Case No. 14-CV-04383-LHK<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 66 |

Plaintiffs Evgeny Epikhin ("Epikhin") and Dmitri Redlikh ("Redlikh") (collectively, "Plaintiffs") bring suit against defendants Game Insight North America, Cooper Media Corp. d/b/a Game Insight, and Game Insight Global Limited d/b/a GIGL (collectively, "Game Insight") and Game Garden, LLC ("Game Garden") (together, with Game Insight, "Distributor Defendants"), as well as against Fly High Games ("Fly High") and Yury Pomortsev ("Pomortsev") (all together, "Defendants").  Having considered the submissions of the parties, the relevant law, and the record in this case, the Court hereby GRANTS Defendants' motion to dismiss.

I.      **BACKGROUND**

   **A. Factual Background**

The crux of this lawsuit is who owns the rights to *Cat Story*, a free mobile application

1

Case No. 14-CV-04383-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

1  ("app") in which players build a virtual village for cats shipwrecked on an island and send the cats

2  on various quests and adventures.  ECF No. 58 (First Amended Complaint, or "FAC") ¶¶ 1, 25.

3  The app is distributed by Game Garden and Game Insight, pursuant to a license from Fly High.

4  *Id.* ¶¶ 8-9, 11, 107, 116.  From 2011 to September 2013, Game Garden, a California Corporation,

5  was owned by Pomortsev, Maxim Bakanovich ("Bakanovich"), and Plaintiffs.  *Id.* ¶ 32.[1]

6  Plaintiffs allege that the app which became *Cat Story* was first conceived in early 2012 at

7  South Port Studios, LLC ("South Port"), a Russian corporation owned solely by Redlikh but

8  managed by Pomortsev.  *Id.* ¶¶ 23-25, 31.  At the time, Plaintiffs say, the app was called

9  *PussyVille*.  *Id.* ¶ 26.  According to Plaintiffs, South Port employees and contractors participated in

10 various tasks related to *PussyVille*, including development of the game concept; creation of art,

11 code and graphics; deployment of game mechanics; and development of a marketing strategy for

12 the app.  *Id.* ¶ 27.  Plaintiffs allege that *PussyVille* contained computer code based on and derived

13 from code created by South Port in connection with earlier South Port app projects such as *Fairy*

14 *Farm*.  *Id.* ¶ 29.  Starting in 2011, Game Garden acted as the distributor of various South Port

15 projects, including *Fairy Farm*.  *Id.* ¶ 33.

16 Starting in mid-2012, things started to go awry.  Plaintiffs allege that Pomortsev informed

17 Plaintiffs that the owner of Fly High was interested in helping develop *PussyVille* in exchange for

18 a share in the app's profits.  *Id.* ¶ 36.  Plaintiffs allege further that Pomortsev began to share with

19 Fly High information regarding *PussyVille*, including the *PussyVille* files and resources from

20 earlier projects like *Fairy Farm*.  *Id.* ¶¶ 37-38.  By the end of 2012, Plaintiffs claim that Pomortsev

21 was representing to them that South Port employees were no longer working to develop

22 *PussyVille*.  *Id.* ¶ 39.  In an e-mail to Plaintiffs dated January 18, 2013, Pomortsev allegedly wrote,

23 "*PussyVille* is not being developed."  *Id.* ¶ 41.  Despite these representations, Plaintiffs claim that

24 Pomortsev and Bakanovich had started a new gaming company, Fair Play Studios, which was

25

26  [1] As indicated above, the Court uses "Game Garden" herein to refer to Game Garden, LLC,
27  the California corporation, and not the Russian partnership, apparently comprised of the same
   owners, that is not a party to this litigation.  *See* FAC ¶ 15.

28
2
Case No. 14-CV-04383-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

secretly working with Fly High to develop the app that would become *Cat Story*. *Id.* ¶¶ 35, 43.

Due to various difficulties, the relationship between Game Garden's four owners began to deteriorate beyond repair. By May 2013, the owners had decided to part ways. *Id.* ¶ 47. Over the next several months, Plaintiffs negotiated with Pomortsev and Bakanovich to sell Plaintiffs' ownership interests in Game Garden. *Id.* ¶ 48-50. Plaintiffs eventually sold their ownership interests in Game Garden to friends of Pomortsev and Bakanovich on September 11, 2013. *Id.* ¶¶ 48, 50. Plaintiffs allege that the sale agreement listed every game, app, and project that was part of the transaction. *Id.* ¶ 51. The agreement, Plaintiffs say, made no mention of *PussyVille*, whose rights and title were allegedly transferred from South Port to Plaintiffs in September 2013. *Id.* ¶¶ 51, 60. Plaintiffs allegedly never authorized Defendants to reproduce, adapt, distribute, or make derivative works of *PussyVille*. *Id.* ¶ 53.

On August 2, 2013—more than a month before Plaintiffs sold their interest in Game Garden—the domain name www.catstorygame.com was registered by Fly High's owner. *Id.* ¶ 55. According to Plaintiffs, Distributor Defendants have since distributed *Cat Story* through various platforms. Specifically, Game Insight began distributing *Cat Story* through Apple's App Store on September 19, 2013, and through Google Play on January 24, 2014. *Id.* ¶¶ 56-57. Game Garden began distributing *Cat Story* through Amazon on February 1, 2014. *Id.* ¶ 58. Game Garden additionally began distributing *Cat Story* through Windows Mobile on April 1, 2014. *Id.* ¶ 59. Since September 2013, there have been over a million downloads of *Cat Story* through these various platforms. *Id.* ¶¶ 106, 115.

Plaintiffs filed for copyright protection for both *PussyVille* and *Cat Story*. *Id.* ¶¶ 62, 64. At the time of the two copyright applications, Plaintiffs allegedly had "no access to the original works created at South Port by South Port employees and contractors" because of the dispute with Pomortsev and Bakanovich. *Id.* ¶¶ 62, 64. Thus, in support of each application, Plaintiffs deposited: (1) the source code of *Fairy Farm*, on which *PussyVille* was allegedly based; and (2) various images of characters in *Cat Story* that are allegedly identical to or derivative of *PussyVille*. *Id.* The U.S. Copyright Office registered *PussyVille* and *Cat Story*, effective September 24, 2014.

3
Case No. 14-CV-04383-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

1  *Id.* ¶¶ 63, 65; ECF No. 73-4 (printout of the record of registration for *PussyVille*, Registration
2  Number TXu001935695); ECF No. 73-5 (printout of the record of registration for *Cat Story*,
3  Registration Number TXu 001912978). Although Plaintiffs applied for *Cat Story*'s registration as
4  co-authors with Fly High, Fly High is not listed as an author on *Cat Story*'s registration. *See* FAC
5  ¶¶ 13, 64-65; ECF No. 73-5.

### B. Procedural History

On September 29, 2014, Plaintiffs filed their complaint. ECF No. 1 ("Compl."). In the complaint, Plaintiffs alleged that *Cat Story* contains significant art, graphics, and other copyrightable material created by South Port during its development of *PussyVille*; that the rights in this copyrightable material were properly assigned to Plaintiffs; and that these rights are infringed by Distributor Defendants' distribution of *Cat Story*. Compl. ¶¶ 1, 25-27, 58. On that basis, Plaintiffs brought causes of action for direct copyright infringement under 17 U.S.C. § 501 (first cause of action), contributory copyright infringement (third cause of action), and vicarious copyright infringement (fourth cause of action) against Distributor Defendants. *Id.* ¶¶ 61-73, 100-09. Plaintiffs brought additional causes of action against Pomortsev and Fly High. Specifically, Plaintiffs alleged fraud (second cause of action) and breach of contract (sixth cause of action) against Pomortsev. *Id.* ¶¶ 74-99, 118-23. Plaintiffs also alleged a cause of action for declaration of copyright ownership against Fly High (fifth cause of action). *Id.* ¶¶ 110-17. Lastly, Plaintiffs brought a cause of action against all defendants for deceptive business practices under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.* (seventh cause of action). *Id.* ¶¶ 124-30.

Following several stipulations to extend time to answer Plaintiffs' complaint, Distributor Defendants filed a motion to dismiss Plaintiffs' third, fourth, and seventh causes of action on January 20, 2015. ECF No. 16. On February 10, 2015, Game Garden filed a motion to disqualify Plaintiffs' counsel, ECF No. 25, which the Court granted on May 12, 2015, ECF No. 45. Plaintiffs were given twenty-one days to find replacement counsel.

While Distributor Defendants' motion to dismiss was pending, on May 11, 2015,

Defendants Pomortsev and Fly High answered Plaintiffs' complaint. ECF Nos. 43, 44. At the same time, Fly High filed counterclaims against Plaintiffs for declaration of copyright ownership and for misrepresentation under 17 U.S.C. § 512(f), *see* ECF No. 43 at 18-19, while Pomortsev filed counterclaims against Plaintiffs for declaration of copyright invalidity and for breach of contract, *see* ECF No. 44 at 18-19. Plaintiffs answered the counterclaims of Fly High and Pomortsev on July 6, 2015. ECF Nos. 60-61.

On May 20, 2015, the Court granted Distributor Defendants' motion to dismiss. ECF No. 36. The Court dismissed with leave to amend Plaintiffs' claims for contributory and vicarious copyright infringement against Distributor Defendants. ECF No. 46. The Court also dismissed with prejudice Plaintiffs' UCL claim against Distributor Defendants. *Id.*

On July 1, 2015, Plaintiffs filed the FAC. ECF No. 58. Plaintiffs reasserted their first six causes of action: direct copyright infringement under 17 U.S.C. § 501 (first cause of action), contributory copyright infringement (third cause of action), and vicarious copyright infringement (fourth cause of action) against Distributor Defendants; fraud (second cause of action) and breach of contract (sixth cause of action) against Pomortsev; and declaration of copyright ownership (fifth cause of action) against Fly High. *Id.* ¶¶ 66-133. Plaintiffs also added Fly High as a defendant to the contributory and vicarious infringement claims (third and fourth causes of action). *Id.* ¶¶ 101-119. Plaintiffs seek damages arising from the alleged infringement, injunctive relief to prevent future infringement, attorney's fees, costs, and other relief. *Id.* at 23-24.

On July 27, 2015, Defendants filed the instant motion to dismiss the FAC. ECF No. 66 ("Mot."). That same day, Defendants filed a request for judicial notice. ECF No. 67. Plaintiffs opposed Defendants' motion to dismiss and filed their own request for judicial notice on August 17, 2015. ECF Nos. 72 ("Opp."); 74.[2] Defendants replied on August 31, 2015. ECF No. 76.

---

[2] The Court GRANTS the parties' unopposed requests for judicial notice. ECF Nos. 67, 74. Under the doctrine of incorporation by reference, the Court may consider on a Rule 12(b)(6) motion not only documents attached to the complaint, but also documents whose contents are alleged in the complaint, provided the complaint "necessarily relies" on the documents or contents thereof, the documents authenticity is uncontested, and the document's relevance is uncontested. *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *Lee v. City of Los Angeles*,

5
Case No. 14-CV-04383-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

## II. LEGAL STANDARD

### A. Motion to Dismiss: Rule 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6). Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

---

250 F.3d 668, 688-89 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1125-26 (9th Cir. 2002). The Court may also take judicial notice of facts not subject to reasonable dispute that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Both parties request judicial notice of documents maintained by the U.S. Copyright Office. Plaintiffs additionally request notice of the Game Garden Sale Agreement, referenced in the FAC at ¶¶ 50, 129, and 132-133. These documents are the proper subject for judicial notice. *See Coto Settlement*, 593 F.3d at 1038 (incorporation by reference); *Lee*, 250 F.3d at 688-89 (matters of public record).

6
Case No. 14-CV-04383-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

**B. Leave to Amend**

If the Court determines that the complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130. Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

**III.  DISCUSSION**

Defendants move to dismiss Plaintiffs' copyright infringement claims (for direct, contributory, and vicarious infringement, or Plaintiffs' first, third, and fourth causes of action) on two grounds: (1) Plaintiffs lack a valid copyright registration for either *PussyVille* or *Cat Story*, which is a prerequisite to a suit for infringement; and (2) Fly High, as a co-author of *Cat Story*, and Distributor Defendants, as licensees of Fly High, cannot infringe *Cat Story*. Defendants additionally argue that the Court should decline to exercise supplemental jurisdiction over Plaintiffs' second, fifth, and sixth causes of action if the Court dismisses Plaintiffs' infringement claims. The Court first considers Plaintiffs' infringement claims, then turns to Plaintiffs' remaining claims.

**A. Copyright Infringement**

As noted, Defendants offer two reasons to dismiss Plaintiffs' copyright infringement claims. First, Defendants argue that registration is a prerequisite to a suit for infringement and that neither *PussyVille* nor *Cat Story* was properly registered. Specifically, Defendants contend that Plaintiffs did not submit bona fide copies of the original works with the applications for

7
Case No. 14-CV-04383-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

registration, which renders the registrations invalid. Mot. at 10-14. Second, Defendants argue that Fly High, as *Cat Story*'s co-author, and Distributor Defendants, as licensees of Fly High, cannot infringe *Cat Story*. *Id.* at 8-10. Because the Court finds below that Plaintiffs lack valid registrations for *PussyVille* and *Cat Story*, the Court need not address Defendants' alternative argument about co-authorship.

The Court begins with the registration requirement. Pursuant to the Copyright Act, "no civil action for infringement of the copyright in any United States work shall be instituted until registration of the copyright claim has been made" with the Copyright Office. 17 U.S.C. § 411(a). Although the registration requirement is not jurisdictional, it is a "precondition to suit." *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010); *see also Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1211 (9th Cir. 1998) ("Copyright registration is not a prerequisite to a valid copyright, but it is a prerequisite to a suit based on a copyright."). Thus, if a work is not validly registered, an "infringement action is foreclosed." *Kodadek*, 152 F.3d at 1212.

As relevant here, valid registration requires that copyright applicants deposit two copies of the work to be registered. 17 U.S.C. § 408(b)(2). The deposit must be of "bona fide copies of the original work," and cannot be "reconstructions" of the original work. *Kodadek*, 152 F.3d at 1211 (quoting *Seiler v. Lucasfilm, Ltd.*, 808 F.2d 1316, 1322 (9th Cir.1986)). "This means that any 'copy' deposited as part of an application for a certificate of copyright registration must be virtually identical to the original and must have been produced by directly referring to the original." *Id.*

In the instant case, Plaintiffs allege that they supported the copyright applications for *PussyVille* and *Cat Story* by depositing source code for *Fairy Farm* and "various images of characters in *Cat Story*, which on information and belief, are identical to or derivative of *PussyVille*." FAC ¶¶ 62, 64.[3] Plaintiffs admit that they "had no access to the original works" of

---

[3] Plaintiffs concede that *PussyVille* and *Cat Story* are "United States works" subject to the registration requirements of 17 U.S.C. § 411(a). Opp. at 11 n.2; *see also* 17 U.S.C. § 101 (defining "United States work").

8
Case No. 14-CV-04383-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

1  *PussyVille* and *Cat Story*, but argue that any deficiencies in the registrations do not require

2  dismissal. *Id.* Defendants respond that the deposited source code and images are not "bona fide

3  copies" of *PussyVille* or *Cat Story* and thus cannot support valid registration for either app. Mot.

4  at 10-12.

5        The Court agrees with Defendants. Plaintiffs' allegations in the FAC—which the Court

6  accepts as true on a motion to dismiss, *see Manzarek*, 519 F.3d at 1031—demonstrate that

7  Plaintiffs failed to deposit bona fide copies of the original *PussyVille* and *Cat Story* with the

8  Copyright Office. The Court takes guidance from *Kodadek*, in which the plaintiff sued MTV for

9  infringing the plaintiff's alleged copyright in the two characters on which MTV based the

10  animated series "Beavis and Butthead." *Kodadek*, 152 F.3d at 1210. Beavis and Butthead first

11  aired in 1993, and the plaintiff subsequently filed for a copyright registration of the two characters,

12  which the plaintiff claimed to have created in 1991. *Id.* at 1210-11. The issue in *Kodadek* was

13  whether the plaintiff's deposit of a reconstruction (sketched in 1993) of the original images in

14  which the plaintiff was asserting a copyright (allegedly sketched in 1991, and no longer possessed

15  by the plaintiff) complied with the registration deposit requirement. *Id.* at 1211. The Ninth

16  Circuit found that because the plaintiff's 1993 drawings were made from the plaintiff's memory of

17  the 1991 drawings, and not made by "directly referring to the originals," the 1993 drawings were

18  not "bona fide copies of the originals." *Id.* at 1212. Thus, the plaintiff could not use the 1993

19  drawings to obtain a copyright registration in the 1991 drawings. *Id.*; *see also Seiler*, 808 F.2d at

20  1322 (finding that depositing a recreation of an original drawing did not satisfy the deposit

21  requirement). "If it were otherwise," the Ninth Circuit observed, "the possibilities for fraud would

22  be limitless." *Kodadek*, 152 F.3d at 1212 (quoting *Seiler*, 808 F.2d at 1322). As a result, the

23  plaintiff "did not properly receive a copyright registration in the 1991 drawings and his

24  infringement action [was] foreclosed." *Id.*

25        Similarly, the materials that Plaintiffs deposited here were not made by "directly referring

26  to the originals." *See id.* Indeed, Plaintiffs admit that they had "no access to the original works."

27  FAC ¶¶ 62, 64. Instead, Plaintiffs deposited the source code for a different game, *Fairy Farm*, and

28

screenshots of images from *Cat Story* taken some time after *Cat Story*'s public release. *Id.*; Opp. at 12. These materials are not "bona fide copies" of the original *PussyVille* and *Cat Story*. *See Kodadek*, 152 F.3d at 1212. First, the source code is from an entirely different game, *Fairy Farm*, which was created before either *PussyVille* or *Cat Story*. FAC ¶¶ 29, 62, 64. Plaintiffs do not even contend that the *Fairy Farm* source code is identical to the source code of *PussyVille* or *Cat Story*. *Id.* ¶¶ 62, 64 (noting *PussyVille* was "based on" the source code from *Fairy Farm*). Second, as noted, the *Cat Story* images were not obtained by "directly referring to the original" *Cat Story*, let alone the original *PussyVille*. *Id.* ¶¶ 62, 64 (admitting that Plaintiffs had no access to the originals). Although Plaintiffs claim that the deposited images are identical to or derivative of *PussyVille*, *Kodadek* requires that copyright applicants deposit "bona fide copies of original works," not copies that a claimant believes are identical to the original. *See Kodadek*, 152 F.3d at 1211. Accordingly, neither the deposited source code nor the deposited images are bona fide copies of *PussyVille* or *Cat Story*.

Plaintiffs counter that *Kodadek* and *Seiler* are inapplicable because Plaintiffs did not deposit "reconstructions" of the original works. However, it is irrelevant whether Plaintiffs' deposited materials are labeled "reconstructions." Plaintiffs in the instant case—like the plaintiffs in *Kodadek* and *Seiler*—"claim[] that the [Defendants] infringed [their] originals, yet [Plaintiffs] [have] no proof of those originals." *Seiler*, 808 F.2d at 1319. Consequently, the Ninth Circuit's concerns about fraud in *Kodadek* and *Seiler* are equally applicable to the materials deposited by Plaintiffs. As the Ninth Circuit stated:

> The Copyright Act does not contemplate the copyrighting of a now non-existent original on the basis of a tendered reconstruction. Section 408 specifies the types of material that must be deposited along with an application for a certificate. The permissible materials include bona fide copies of the original work only; there is no mention of "reconstructions." If it were otherwise, the possibilities for fraud would be limitless.

*Kodadek*, 152 F.3d at 1212 (quoting *Seiler*, 808 F.2d at 1322). If it were otherwise, the plaintiff in *Kodadek* could have registered the Beavis and Butthead characters by taking a photograph of the allegedly infringing Beavis and Butthead TV show as it aired. But the "Copyright Act does not

10
Case No. 14-CV-04383-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

contemplate the copyrighting of a now non-existent original" through later constructions that purport to represent the original. *See id.* Accordingly, Plaintiffs cannot register *PussyVille* or *Cat Story* by depositing materials created without referencing the original works, including materials from other games or later time periods. This rule "ensure[s] that proof of the infringement claim consists of the works alleged to be infringed." *Seiler*, 808 F.2d at 1319.

Plaintiffs contend that the lack of bona fide copies does not undermine Plaintiffs' registrations for three reasons. First, Plaintiffs argue that copyright registrations are presumed valid, and Defendants failed to submit evidence that overcomes the presumption of validity. Opp. at 11 (citing 17 U.S.C. § 410(c) (certificate of registration is prima facie evidence of a valid copyright); *Apple Computer, Inc. v. Formula Int'l Inc.*, 725 F.2d 521, 523 (9th Cir. 1984) (same), *overruling on other grounds recognized by Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 998 (9th Cir. 2011); *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1145 (9th Cir. 2003) ("The presumption of the validity of a registered copyright may be overcome by the 'offer [of] some evidence or proof to dispute or deny the plaintiff's prima facie case of infringement.'" (alteration in original))). However, Defendants offer "some evidence or proof" to overcome the presumption of validity by pointing to Plaintiffs' own admissions in the FAC. *See Lamps Plus, Inc.*, 345 F.3d at 1145. As discussed above, these admissions demonstrate that Plaintiffs' registrations are invalid. Additionally, *Kodadek* notes that the "certificate of registration [is] not prima facie evidence of a valid copyright" when the registration is not supported by the deposit of bona fide copies of the original work. *See Kodadek* 152 F.3d at 1211-12; *see also Seiler*, 808 F.2d at 1322 (finding that the certificate of registration, which was based on deposited reconstructions rather than copies of original works, is irrelevant to the validity of the copyright of the original work unless the "reconstructions are the same as the originals"). Accordingly, Plaintiffs' registrations are not presumed valid.

Second, Plaintiffs argue that any inaccuracies in their submissions to the Copyright Office do not require dismissal of Plaintiffs' claims. Opp. at 11. Instead, Plaintiffs urge the Court to direct Plaintiffs to correct any inaccuracies, and cite a number of cases stating that minor

11
Case No. 14-CV-04383-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

1  inaccuracies in a copyright application do not invalidate the resulting registration.  *See Three Boys*
2  *Music Corp. v. Bolton*, 212 F.3d 477, 486 (9th Cir. 2000) (finding the plaintiff registered a
3  "complete copy" of the allegedly infringed song even though the deposit differed slightly from the
4  recorded song); *Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1156 (9th Cir.
5  2010) (holding that plaintiff's inadvertent mistake in naming the sole shareholder, rather than the
6  entity, as the author of the work did not invalidate the work's copyright); *Lamps Plus, Inc.*, 345
7  F.3d at 1144-45 (holding that the plaintiff's failure to disclose that the work was a compilation or
8  derivative work did not invalidate the plaintiff's registration for the work).  However, while these
9  cases accurately state Ninth Circuit law, they are irrelevant to the instant action.  Here, Defendants
10  do not argue that Plaintiffs' registrations involve comparable minor inaccuracies.  Rather,
11  Defendants assert that Plaintiffs failed to deposit bona fide copies of originals as required by
12  § 411(a).  The Ninth Circuit has consistently ruled that, in such a case, an "infringement action is
13  foreclosed."  *Kodadek*, 152 F.3d at 1212; *see also Pringle v. Adams*, 556 Fed. App'x 586, 587 (9th
14  Cir. 2014) (affirming district court's grant of summary judgment to defendants in copyright
15  infringement action because the plaintiff failed to deposit a bona fide copy of the original work
16  with the Copyright Office).

17  Third, Plaintiffs compare this case to *Data General Corp. v. Grumman Systems Support*
18  *Corp.*, 803 F. Supp. 487, 491 (D. Mass.1992), in which the Massachusetts district court held that
19  the plaintiff's failure to produce a software program's original source code did not preclude the
20  plaintiff from proving copyright infringement of that software program.  Opp. at 13.  However, the
21  *Data General* decision rested on facts and issues not present here.  Most importantly, the
22  plaintiff's copyright registration was supported by bona fide copies of portions of the original
23  source code.  *See Data General*, 803 F. Supp. at 488.  The defendant never suggested otherwise.
24  *See id.*  Instead, the defendant argued that the plaintiff needed to produce the software program's
25  entire original source code to prove infringement.  *Id.* at 490.  Thus, the issue in *Data General* was
26  the sufficiency of the plaintiff's proof of infringement, not the validity of the plaintiff's
27  registration.  *See id.* at 490-92.  As a result, *Data General* does not save Plaintiffs' invalid

28

12
Case No. 14-CV-04383-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

1  registrations in the instant case.

2        For the reasons stated above, the Court concludes that Plaintiffs did not deposit bona fide copies of the original works of *PussyVille* and *Cat Story*. Consequently, Plaintiffs "did not properly receive a copyright registration . . . and [their] infringement action is foreclosed." *Kodadek*, 152 F.3d at 1212. Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' copyright infringement claims (first, third, and fourth causes of action). This dismissal is without prejudice to Plaintiffs filing suit after properly registering *PussyVille* or *Cat Story*, if Plaintiffs are able to do so.

### B. Supplemental Jurisdiction

      Defendants argue that Plaintiffs remaining claims—fraud and breach of contract against Pomortsev (second and sixth causes of action), and declaration of ownership against Fly High (fifth cause of action)—should be dismissed under the Court's discretionary power to decline supplemental jurisdiction. Mot. at 14-16. Defendants argue that these claims all arise under Russian law, and thus dismissal would serve economy, convenience, fairness, and comity. *Id.* Plaintiffs counter that California law applies to at least the fraud claim, and possibly the declaration of ownership claim. Opp. at 14-15. Although Plaintiffs concede that Russian law may apply to the breach of contract claim, Plaintiffs contend that there is no compelling reason why this Court may not adjudicate the contract claim by applying Russian law. *Id.* at 15.

      A federal court's exercise of supplemental jurisdiction is governed by 28 U.S.C. § 1367. Section 1367(a) provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Under § 1367(c)(3), however, a district court has the discretion to decline to exercise supplemental jurisdiction over a claim where "the district court has dismissed all claims over which it has original jurisdiction." In exercising that discretion, courts consider whether the exercise of supplemental jurisdiction is the interests of economy, convenience, fairness, and comity.

13

Case No. 14-CV-04383-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988). However, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)); *see also Wren v. Sletten Const. Co.*, 654 F.2d 529, 536 (9th Cir. 1981) ("When the state issues apparently predominate and all federal claims are dismissed before trial, the proper exercise of discretion requires dismissal of the state claim.").

By dismissing Plaintiffs' copyright infringement claims, the Court is dismissing all claims over which the Court exercises original jurisdiction.[4] Plaintiffs do not point to any factors differentiating this case from the "usual case in which all federal-law claims are eliminated before trial." Plaintiffs argue that California law, and not Russian law, applies to some of the remaining claims. *See* Opp. at 14-15. However, Plaintiffs do not dispute that the dismissal of the copyright infringement claims removes all *federal* law claims from the case. *See id.*

Accordingly, the Court finds that the balance of factors weighs in favor of dismissing Plaintiffs' remaining claims. This case is still at the pleading stage, and only minimal discovery has taken place. Thus, "[j]udicial resources are best conserved by dismissing the case at this stage." *See NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 837038 (N.D. Cal. 2014)

---

[4] In opposition, Plaintiffs do not argue that the Court has diversity jurisdiction. *See* Opp. at 14-15. However, Plaintiffs assert diversity jurisdiction in the FAC, and Plaintiffs' opposition appears to assume that diversity jurisdiction exists. *See id.*; FAC ¶ 18. The Court thus briefly addresses diversity jurisdiction.

Plaintiffs are foreign citizens, and the only defendants in the non-copyright-infringement claims, Fly High and Pomortsev, are also foreign citizens. *See* FAC ¶¶ 2-3, 12, 14. While diversity jurisdiction may exist in certain cases involving foreign parties, *see* 28 U.S.C. § 1332(a) (diversity requirement met between "citizens of a State and citizens or subjects of a foreign state" and between "citizens of different States and in which citizens or subjects of a foreign state are additional parties"), there is no jurisdiction in cases involving an alien plaintiff suing an alien defendant, even if there are citizen defendants present. *See Jungil Lee v. ANC Car Rental Corp.*, 220 Fed. App'x 493, 495 (9th Cir. 2007) (dismissing case where foreign plaintiffs sued foreign and U.S. citizen defendants) (citing *Faysound, Ltd. v. United Coconut Chemicals, Inc.*, 878 F.2d 290, 294-95 (9th Cir. 1989)); *Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.*, 20 F.3d 987, 990-91 (9th Cir. 1994) ("[D]iversity jurisdiction does not encompass a foreign plaintiff suing foreign defendants." (citing *Cheng v. Boeing Co.*, 708 F.2d 1406, 1412 (9th Cir. 1983)). Accordingly, Plaintiffs cannot invoke diversity jurisdiction in the instant case.

(finding similar facts supported declining jurisdiction). Additionally, dismissal promotes comity as it allows California or Russian courts to interpret the questions of local law that Plaintiffs present. *See id.* Moreover, convenience weighs in favor of dismissal as the parties, witnesses, and evidence are in Russia. *See* ECF No. 81 (joint case management statement noting that depositions may require Russian parties and non-parties to travel to the United States, which would require the witnesses to hold valid visas, or to Turkey). Because judicial economy, convenience, fairness, and comity weigh in favor of dismissal, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining claims. As a result, Plaintiffs' claims for fraud, breach of contract, and declaration of ownership are DISMISSED without prejudice.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss Plaintiffs' copyright infringement claims (first, third, and fourth causes of action) without prejudice. The Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining claims and thus GRANTS Defendants' motion to dismiss Plaintiffs' fraud, breach of contract, and declaration of ownership claims (second, fifth, and sixth causes of action) without prejudice. The Clerk shall close the case file.

**IT IS SO ORDERED.**

Dated: November 11, 2015

_____
LUCY H. KOH
United States District Judge