UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| EVGENY EPIKHIN and DMITRI REDLIKH,<br><br>Plaintiffs,<br><br>v.<br><br>GAME INSIGHT NORTH AMERICA, et al.,<br><br>Defendants. | Case No. 14-CV-04383-LHK<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR ATTORNEY'S FEES AND COSTS**<br><br>Re: Dkt. No. 87 |

Plaintiffs Evgeny Epikhin ("Epikhin") and Dmitri Redlikh ("Redlikh") (collectively, "Plaintiffs") sued Defendants Game Insight North America, Cooper Media Corp. d/b/a Game Insight, and Game Insight Global Limited d/b/a GIGL (collectively, "Game Insight") and Game Garden, LLC ("Game Garden") (together, with Game Insight, "Distributor Defendants"), as well as Fly High Games ("Fly High") and Yury Pomortsev ("Pomortsev") (all together, "Defendants"). On November 11, 2015, the Court granted Defendants' motion to dismiss. ECF No. 83. Defendants now move for attorney's fees and costs as "prevailing parties" under the Copyright Act, 17 U.S.C. § 505. ECF No. 87. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court DENIES Defendants' motion for attorney's fees and costs.

1
Case No. 14-CV-04383-LHK
ORDER DENYING DEFENDANTS' MOTION FOR ATTORNEY'S FEES AND COSTS

## I. BACKGROUND

### A. Factual Background

The crux of the underlying dispute is who owns the rights to *Cat Story*, a free mobile application ("app") in which players build a virtual village for cats shipwrecked on an island and send the cats on various quests and adventures. ECF No. 58 (First Amended Complaint, or "FAC") ¶¶ 1, 25. Plaintiffs allege that the app that became *Cat Story* was first conceived in early 2012 at South Port Studios, LLC ("South Port"), a Russian corporation owned by Redlikh and managed by Pomortsev. *Id.* ¶¶ 23–25, 31. At the time, Plaintiffs say, the app was called *PussyVille*. *Id.* ¶ 26.

At the time that *PussyVille* was in development, Plaintiffs, Pomortsev, and Maxim Bakanovich ("Bakanovich") were co-owners of Game Garden, a California Corporation. *Id.* ¶ 10, 15, 32. However, due to various difficulties, the relationship between Game Garden's four owners began to deteriorate beyond repair. In mid-2013, Plaintiffs negotiated with Pomortsev and Bakanovich to sell Plaintiffs' ownership interests in Game Garden. *Id.* ¶ 48–50. Plaintiffs eventually sold their interests in Game Garden to friends of Pomortsev and Bakanovich on September 11, 2013. *Id.* The sale agreement did not mention *PussyVille*. *Id.* ¶ 51. At the time of the sale, Plaintiffs believed, based on alleged misrepresentations by Pomortsev, that *PussyVille* was no longer in development. *Id.* ¶¶ 39, 41, 51.

Following the sale of Plaintiffs' interests in Game Garden, Game Garden and Game Insight began distributing *Cat Story* through the Apple App Store, Google Play, Amazon, and Windows Mobile. *Id.* ¶¶ 56–59. Since September 2013, there have been over a million downloads of *Cat Story* through these various platforms. *Id.* ¶¶ 106, 115.

Plaintiffs allege that *Cat Story* contains significant art, graphics, and other copyrightable material created by South Port during the development of *PussyVille*; that the rights in this copyrightable material were properly assigned to Plaintiffs; and that these rights are infringed by Distributor Defendants' distribution of *Cat Story*. FAC ¶¶ 28, 60, 71–72. Defendants counter that *Cat Story* was developed solely by Fly High, which then licensed the app to Distributor

2

Case No. 14-CV-04383-LHK
ORDER DENYING DEFENDANTS' MOTION FOR ATTORNEY'S FEES AND COSTS

1   Defendants. *Id.* ¶ 107; ECF No. 44 (Pomortsev's counterclaims).

2   Before filing the instant lawsuit, Plaintiffs filed for copyright protection for *PussyVille* and
3   *Cat Story*. FAC ¶¶ 62, 64. At the time of the two copyright applications, Plaintiffs allegedly had
4   "no access to the original works created at South Port by South Port employees and contractors"
5   because of the dispute with Pomortsev and Bakanovich. *Id.* Thus, in support of each application,
6   Plaintiffs deposited: (1) the source code of *Fairy Farm*, a game developed by South Port on which
7   *PussyVille* was allegedly based; and (2) various images of characters in *Cat Story* that are
8   allegedly identical to or derivative of *PussyVille*. *Id.* The U.S. Copyright Office registered
9   *PussyVille* and *Cat Story*, effective September 24, 2014. *Id.* ¶¶ 63, 65.

10  **B. Procedural Background**

11  On September 29, 2014, Plaintiffs filed the complaint via attorney Shannon Gallagher
12  ("Gallagher"). ECF No. 1. Plaintiffs brought causes of action for direct copyright infringement
13  under 17 U.S.C. § 501 (first cause of action), contributory copyright infringement (third cause of
14  action), and vicarious copyright infringement (fourth cause of action) against Distributor
15  Defendants. *Id.* ¶¶ 61–73, 100–09. Plaintiffs brought additional causes of action against
16  Pomortsev and Fly High. Specifically, Plaintiffs alleged fraud (second cause of action) and breach
17  of contract (sixth cause of action) against Pomortsev. *Id.* ¶¶ 74–99, 118–23. Plaintiffs also
18  asserted a cause of action for declaration of copyright ownership against Fly High (fifth cause of
19  action). *Id.* ¶¶ 110–17. Lastly, Plaintiffs brought a cause of action against all defendants for
20  deceptive business practices under California's Unfair Competition Law ("UCL"), Cal. Bus. &
21  Prof. Code § 17200 *et seq.* (seventh cause of action). *Id.* ¶¶ 124–30.

22  On May 11, 2015, Pomortsev and Fly High answered Plaintiffs' complaint. ECF Nos. 43,
23  44. Fly High also filed counterclaims against Plaintiffs for misrepresentation in violation of the
24  Digital Millennium Copyright Act, 17 U.S.C. § 512(f), and declaration of copyright ownership.
25  *See* ECF No. 43 at 17–19. Pomortsev filed counterclaims against Plaintiffs for declaration of
26  copyright invalidity and breach of contract. *See* ECF No. 44 at 18–19. Plaintiffs answered the
27  counterclaims of Fly High and Pomortsev on July 6, 2015. ECF Nos. 60–61.

1    On May 12, 2015, the Court granted Game Garden's motion to disqualify Plaintiff's

2 counsel, Gallagher. ECF No. 45. The Court determined that Gallagher had previously represented

3 Game Garden and that Gallagher's prior representation of Game Garden bore a substantial

4 relationship to Gallagher's representation of Plaintiffs in the instant action. *Id.* at 9. The Court

5 relied in part on an April 5, 2013 letter sent from Gallagher to Plaintiffs, Pomortsev, and

6 Bakanovich concerning "threats to the company's intellectual property interests." The Court

7 concluded that the letter was sent in the course of Gallagher's representation of Game Garden and

8 referred to the app later published as *Cat Story*, the subject of the instant litigation. *Id.* at 10–11.

9 The Court also concluded that Gallagher represented Game Garden in the sale of Plaintiffs'

10 interests in Game Garden, which is the subject of Plaintiffs' breach of contract claim against

11 Pomortsev. The Court gave Plaintiffs twenty-one days to find replacement counsel. *Id.* at 13.

12 Plaintiffs' new counsel, Jessica Taran, filed a notice of appearance on June 1, 2015. ECF No. 47.

13    In the interim, the parties agreed that the Court should proceed to rule on a motion to

14 dismiss filed by Distributor Defendants before Gallagher's disqualification. ECF No. 42 at 10.

15 On May 20, 2015, the Court granted Distributor Defendants' motion to dismiss Plaintiffs' third,

16 fourth, and seventh causes of action. ECF No. 46. Distributor Defendants did not move to

17 dismiss the other causes of action. *See* ECF No. 16. The Court dismissed Plaintiffs' claims for

18 contributory and vicarious copyright infringement against Distributor Defendants (third and fourth

19 causes of action) because Plaintiffs failed to plead facts to support either claim. ECF No. 46 at 7–

20 9. However, the Court granted leave to amend because "amendment would not necessarily be

21 futile." *Id.* The Court also dismissed with prejudice Plaintiffs' UCL claim against Distributor

22 Defendants (seventh cause of action) because the claim was preempted by the Copyright Act. *Id.*

23 at 9–10.

24    On July 1, 2015, Plaintiffs filed the FAC. ECF No. 58. Plaintiffs reasserted their first six

25 causes of action: direct, contributory, and vicarious copyright infringement against Distributor

26 Defendants; fraud and breach of contract against Pomortsev; and declaration of copyright

27 ownership against Fly High. *Id.* ¶¶ 66–133. Plaintiffs also added Fly High as a defendant to the

28

4

contributory and vicarious infringement claims. *Id.* ¶¶ 101–119.

On November 11, 2015, the Court dismissed the FAC in its entirety. ECF No. 83. First, the Court dismissed Plaintiffs' direct, contributory, and vicarious copyright infringement claims against Distributor Defendants and Fly High. The Court noted that copyright registration is a "precondition" to a copyright infringement suit, and that registration requires copyright applicants to deposit two bona fide copies of the work to be registered with the Copyright Office. *Id.* at 8. In the FAC, Plaintiffs admitted that the deposit for the *PussyVille* and *Cat Story* registrations included the source code for a different game, *Fairy Farm*, and images of *Cat Story* taken after the game was published. *Id.* The Court concluded that these works were not bona fide copies of *PussyVille* or *Cat Story*. Specifically, the Court found that the deposited works were not "virtually identical" to the original *PussyVille* or *Cat Story*, nor were the deposited works "produced by directly referring to the original." *Id.* at 9–10. Accordingly, the Court dismissed Plaintiffs' copyright claims without prejudice to Plaintiffs bringing suit after properly registering *PussyVille* or *Cat Story*. *Id.* at 13. The Court's decision was guided by two Ninth Circuit cases interpreting the Copyright Act's registration requirements: *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209 (9th Cir. 1998), and *Seiler v. Lucasfilm, Ltd.*, 808 F.2d 1316 (9th Cir. 1986).

Second, the Court declined to exercise jurisdiction over Plaintiffs' remaining claims: fraud, breach of contract, and declaration of ownership. Defendants argued that each of these claims arose under Russian law while Plaintiffs contended that California law applied to the fraud claim and potentially the declaration of ownership claim. *Id.* at 13–14. The Court did not resolve the choice of law issue, but noted that dismissal would allow California or Russian courts to interpret local law questions. *Id.* at 15. The Court also determined that judicial economy, convenience, and fairness weighed in favor of dismissal, and thus dismissed Plaintiffs' fraud, breach of contract, and declaration of ownership claims without prejudice. *Id.*

On December 2, 2015, the parties stipulated to dismiss Fly High's and Pomortsev's counterclaims without prejudice. ECF No. 86. On December 4, 2015, Defendants filed the instant motion for attorney's fees and costs. ECF No. 87 ("Mot."). Plaintiffs opposed the instant motion

5
Case No. 14-CV-04383-LHK
ORDER DENYING DEFENDANTS' MOTION FOR ATTORNEY'S FEES AND COSTS

on January 8, 2016. ECF No. 90 ("Opp."). Defendants replied on January 22, 2016. ECF No. 93.

## II.     LEGAL STANDARD

The Copyright Act permits a court to award full costs and reasonable attorney's fees to a prevailing party. 17 U.S.C. § 505. "Prevailing plaintiffs and prevailing defendants are to be treated alike, [and] attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion" and in an evenhanded fashion. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994). To guide the exercise of the court's discretion, the court should consider five non-exclusive "*Fogerty* factors": "(1) the degree of success obtained; (2) frivolousness; (3) motivation; (4) the objective unreasonableness of the losing party's factual and legal arguments; and (5) the need, in particular circumstances, to advance considerations of compensation and deterrence." *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1180–81 (9th Cir. 2013) (citing *Fogerty*, 510 U.S. at 534 n.19). Further, the court must consider whether an award "will further the purposes" of the Copyright Act. *SOFA Entm't, Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1280 (9th Cir. 2013). "The primary objective of the Copyright Act is to encourage the production of original literary, artistic, and musical expression for the good of the public." *Fogerty*, 510 U.S. at 524.

To determine the amount of attorney's fees to award, courts within the Ninth Circuit have employed the lodestar method. *See, e.g.*, *Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1104 (N.D. Cal. 2003). "When it sets a fee, the district court must first determine the presumptive lodestar figure by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate." *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993). The party seeking fees bears the burden of demonstrating that the rates requested are "in line with those prevailing in the community for similar services." *Id.* Generally, "the relevant community is the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). "Although in most cases, the lodestar figure is presumptively a reasonable fee award, the district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it." *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n. 4 (9th Cir. 2001).

### III. DISCUSSION

Defendants seek a total of $210,310.66 in attorney's fees and costs. Specifically, Game Garden seeks $3,064.16 in costs and $122,850 in attorney's fees, which includes fees that Game Garden paid on behalf of Pomortsev and Fly High. Game Insight seeks $84,396.50 in attorney's fees.

Plaintiffs do not dispute that Defendants are "prevailing parties" for purposes of the Copyright Act. Opp. at 3. However, Plaintiffs ask the Court to exercise discretion to decline to award fees. To determine whether to award fees, the Court considers the five *Fogerty* factors and whether an attorney's fees award will further the purposes of the Copyright Act.

#### 1. Degree of Success Obtained

The Court finds the first factor, degree of success obtained, to be neutral. Although the Court dismissed Plaintiffs' copyright claims against Defendants, Defendants prevailed on a technical defense rather than on the merits, and the dismissal was without prejudice. The Ninth Circuit has held that success on a technical defense, such as the failure to satisfy the copyright registration requirements as was the case here, does not support an award of fees like a successful defense on the merits. *Fantasy, Inc. v. Fogerty ("Fogerty II")*, 94 F.3d 553, 556, 560 (9th Cir. 1996).

In the instant case, Plaintiffs pursued three claims of copyright infringement against Distributor Defendants and Fly High. *See* FAC. The Court dismissed all three claims because Plaintiffs did not deposit bona fide copies of *PussyVille* or *Cat Story* with the copyright applications, and thus did not properly register *PussyVille* or *Cat Story*. *See* ECF No. 83. The Court notes that, during the instant litigation, Plaintiffs requested that Microsoft, Amazon, and Apple cease distributing *Cat Story*. ECF No. 87-1, Decl. of Jeffrey T. Norberg ¶ 8. After the Court's ruling, Defendants were able to republish *Cat Story* in the Windows Phone Marketplace. ECF No. 93-1, Reply Decl. of Jeffrey T. Norberg Ex. 1. Accordingly, the Court recognizes that Defendants were successful in defending against Plaintiffs' claims.

However, the Ninth Circuit has stated that success on a technical defense—including the

very defense asserted here, copyright registration requirements—does not support an award of fees like a successful defense on the merits. *Fogerty II*, 94 F.3d at 556, 560. In *Fogerty II*, the Ninth Circuit affirmed the district court's grant of attorney's fees based, in part, on the district court's reasoning that the "defense was the type of defense that furthers the purposes underlying the Copyright Act and therefore should be encouraged through a fee award" because the defendant "prevailed on the merits rather than on a technical defense, such as the statute of limitations, laches, or the *copyright registration requirements*." *Id.* at 556 (emphasis added). The Ninth Circuit also noted that attorney's fees are not automatically awarded to every prevailing party because, in part, "copyright defendants do not always reach the merits, prevailing instead on technical defenses." *Id.* at 560. In the instant case, Defendants prevailed on just such a technical defense, copyright registration requirements.

Moreover, the Court dismissed Plaintiffs' claims without prejudice. While Plaintiffs may not reassert copyright infringement claims based on the registrations asserted in the instant case, Defendants remain subject to suit should Plaintiffs obtain new registrations with valid deposit copies of *PussyVille* and *Cat Story*. *See Tavory v. NTP, Inc.*, 297 F. App'x 986, 990–91 (Fed. Cir. 2008) (noting that "the district court's holding that Tavory's copyright registration is invalid would preclude him from ever asserting it against [the defendant]"); *see also Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 2014 WL 1724478, at *6 (N.D. Cal. Apr. 29, 2014) (noting that the degree of success is mitigated because the defendant remained subject to suit).

Lastly, although registration is a prerequisite to an infringement suit, registration is not a prerequisite to a valid copyright. *Kodadek*, 152 F.3d at 1211. The Court's order dismissing Plaintiffs' claims based on copyright registration requirements did not consider the merits of whether Plaintiffs held a valid copyright or whether Defendants infringed that copyright. *See* ECF No. 83. Additionally, Defendants did not challenge the validity of the registrations on the first motion to dismiss. *Cf. Minden Pictures, Inc.*, 2014 WL 1724478, at *6 ("[T]he Court finds the degree of success is mitigated by the fact that no substantive ruling regarding the underlying question of infringement was made."); *Perlan Therapeutics, Inc. v. Nexbio, Inc.*, 2007 WL

8
Case No. 14-CV-04383-LHK
ORDER DENYING DEFENDANTS' MOTION FOR ATTORNEY'S FEES AND COSTS

935619, at *2 (S.D. Cal. Mar. 19, 2007) ("[W]hile Defendants succeeded in obtaining dismissal of the copyright claims, the ruling did not reach the merits and Plaintiffs were able to re-assert their claims in a new proceeding. Thus degree of success was small."). Accordingly, because the Court dismissed Plaintiffs' claims based on technical registration requirements and without prejudice, the Court finds that the degree of success obtained does not support an award of attorney's fees.

### 2. Objective Unreasonableness

The Court turns to objective unreasonableness, which the Court finds weighs against an award of attorney's fees. "A claim is objectively unreasonable where the party advancing it 'should have known from the outset that its chances of success in this case were slim to none.'" *See Perfect 10, Inc. v. Giganews, Inc.*, 2015 WL 1746484, at *11 (C.D. Cal. Mar. 24, 2015) (quoting *SOFA Entm't, Inc.*, 709 F.3d at 1280). Similarly, "[a] claim that is not 'objectively unreasonable' at the outset can become so if the litigant continues to pursue it when the litigant knew or should have known that the chance of success was slim to none." *Frost-Tsuji Architects v. Highway Inn, Inc.*, 2015 WL 5601853, at *5 (D. Haw. Sept. 23, 2015). The "mere fact that [a party] lost cannot establish his objective unreasonability." *Seltzer*, 725 F.3d at 1181.

As discussed above, the Court dismissed Plaintiffs' copyright infringement claims because a valid copyright registration is a "precondition" to a copyright infringement suit, and Plaintiffs did not properly register *PussyVille* or *Cat Story*. ECF No. 83 at 7–10. In the Court's order, the Court relied on two Ninth Circuit cases: *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209 (9th Cir. 1998), and *Seiler v. Lucasfilm, Ltd.*, 808 F.2d 1316 (1986). Both *Kodadek* and *Seiler* state that copyright registration deposits must be of bona fide copies of the original work, and cannot be "reconstructions" of the original work. *Kodadek*, 152 F.3d at 1211 (quoting *Seiler*, 808 F.2d at 1322). Thus, a bona fide copy "must be virtually identical to the original and must have been produced by directly referring to the original." *Id.* at 1212. As discussed in the Court's order, Plaintiffs admitted in the FAC that they had no access to the original *PussyVille* or *Cat Story*, and that Plaintiffs deposited the source code for a different game and photographs taken after the publication of *Cat Story*. In light of *Kodadek* and *Seiler*, the Court concluded that these deposit

9

copies were not bona fide copies of *PussyVille* or *Cat Story*.  ECF No. 83 at 10.

However, the Court can not find that Plaintiffs' claims were objectively unreasonable.  First, the Copyright Office did issue registrations for both *PussyVille* and *Cat Story*.  FAC ¶¶ 63, 65.  Further, these registrations were apparently issued after Gallagher discussed the contents of the *Cat Story* deposits with an attorney from the Copyright Office.  *See* ECF No. 92, Decl. of Jessica Taran ("Taran Decl."), Ex A.  Defendants offer no reason why Plaintiffs were unreasonable in relying on the Copyright Office's review process and registration of *PussyVille* and *Cat Story*.  The Court notes that there is no evidence before the Court that Plaintiffs knowingly misled the Copyright Office as to the deposit copies.  Given the registrations, Plaintiffs could have believed that the Copyright Office found the deposit copies sufficient, or that any needed changes to the registrations would not impact the registrations' validity.  While the Court did not agree that the deposit copies satisfied the registration requirements, the Court can not say that Plaintiffs should have known "that [their] chances of success in this case were slim to none" in light of the issued registrations.  *Giganews, Inc.*, 2015 WL 1746484, at *11.

Additionally, Plaintiffs raised a number of counterarguments in opposition to Defendants' motion to dismiss for lack of a valid registration, including that registered copyrights are presumed valid and that Plaintiffs should be permitted to revise the copyright registrations without the dismissal of the case.  Although the Court did not find Plaintiffs' counterarguments persuasive, the Court also did not find the counterarguments to be baseless or unreasonable.  *See Seltzer*, 725 F.3d at 1181 (noting that the "mere fact that [a party] lost cannot establish his objective unreasonability").  Accordingly, objective unreasonableness weighs against an award of fees.

### 3. Frivolousness

The next factor, frivolousness, also weighs against an award of attorney's fees.  A claim is frivolous when it is "clearly baseless" and involves "fantastic or delusional scenarios."  *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 2005 WL 2007932, at *4 (N.D. Cal. Aug.12, 2005) (quoting *Neitzke v. Williams*, 490 U.S. 324, 327–28 (1989)).  "A claim is not frivolous merely because it is unsuccessful."  *Bisson-Dath v. Sony Computer Entm't Am. Inc.*, 2012 WL 3025402, at *2 (N.D.

Cal. July 24, 2012). The standard for frivolousness appears to be "somewhat" higher than the standard for objective unreasonableness. *See Giganews, Inc.*, 2015 WL 1746484, at *11. Thus, for the same reasons that the Court found Plaintiffs' claims were not objectively unreasonable, the Court finds that Plaintiffs' claims were not frivolous.

### 4. Motivation

"[T]he existence of bad faith or an improper motive in bringing or pursuing an action weighs in favor of an award of fees to a prevailing party." *Frost-Tsuji Architects*, 2015 WL 5601853, at *7. "A finding of bad faith can be based on actions that led to the lawsuit, as well as on the conduct of the litigation." *Id.* Defendants contend that bad faith may be inferred because (1) Plaintiffs filed in the United States, although the majority of the parties are from Russia and the development of *PussyVille* and *Cat Story* occurred in Russia; and (2) Plaintiffs' counsel had to be disqualified by the Court based on an obvious conflict of interest and Plaintiffs' counsel misrepresented facts to the Court when opposing the motion for disqualification. Mot. at 10–11.

As to Defendants' first argument, the Court has no basis to conclude that the instant case should have been brought in Russia. Defendants did not move to dismiss based on *forum non conveniens*, a doctrine that permits the dismissal of a case when "a court abroad is the more appropriate and convenient forum for adjudicating the controversy." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007). Moreover, Game Garden is a California Corporation, and one of the Game Insight defendants has its principal place of business in California. FAC ¶¶ 6, 8–10.

Additionally, Plaintiffs' federal copyright infringement claims were not Plaintiffs' only claims possibly involving United States' law. In opposition to the second motion to dismiss, Plaintiffs asserted that California law—not Russian law—applied to at least the fraud claim and possibly the declaration of ownership claim. *See* ECF No. 72 at 14–15. In declining supplemental jurisdiction over Plaintiffs' fraud, declaration of ownership, and breach of contract claims, the Court specifically declined to determine whether California or Russian law applied. *See* ECF No. 83 at 15 (noting either California or Russian courts could interpret the non-federal questions in the

1   case). Accordingly, the Court can not infer that Plaintiffs' decision to bring suit in California is
2   evidence of bad faith.

3   As to Defendants' second point, Defendants claim that Gallagher was disqualified due to
4   an "obvious" conflict of interest and that Gallagher misrepresented evidence in opposition to the
5   motion for disqualification. Mot. at. 10–11. Specifically, Defendants focus on a letter sent from
6   Gallagher to Game Garden's four owners on April 5, 2013 concerning "threats to the company's
7   intellectual property interests." In the motion for disqualification, Defendants argued that this
8   letter referred to *PussyVille*, and thus the letter demonstrated that Gallagher had previously
9   represented Game Garden with respect to issues present in the instant litigation. In opposition to
10  the motion, Gallagher represented that the letter related to another game, *Fairy Farm*. ECF No. 26
11  at 8–9. Gallagher also stated that "it was not until after the sale of [Plaintiffs'] interests in [Game
12  Garden] that Gallagher even learn [sic] of *PussyVille*." *Id.* at 10. According to Defendants,
13  however, this statement is a lie. Defendants cite an email from Gallagher to Plaintiff Epikhin,
14  dated April 2, 2013—before Plaintiffs' sale of their interests in Game Garden—that discusses
15  *PussyVille* and indicates Gallagher's awareness of *PussyVille*. Mot. at 11.

16  The Court concludes that Gallagher's disqualification is not sufficient to show bad faith or
17  an improper purpose by Plaintiffs. First, although the Court disqualified Gallagher, the Court did
18  not suggest that Plaintiffs' arguments against disqualification were frivolous or in bad faith. *See*
19  ECF No. 45. Second, Defendants do not show that Gallagher misrepresented the nature of the
20  April 5, 2013 letter to the Court. In the Court's order disqualifying Gallagher, the Court agreed
21  with Defendants that the April 5, 2013 letter was sent in the course of Gallagher's representation
22  of Game Garden and referred to *PussyVille*, the subject of the instant litigation. *Id.* at 10–11.
23  However, the Court specifically noted that the declarations of Gallagher and Plaintiff Redlikh did
24  not dispute that the April 5, 2013 letter related to *PussyVille*. *Id.* at 11.

25  It does appear that Gallagher may have misrepresented when she became aware of the
26  game *PussyVille*, which the Court finds concerning. However, the Court finds that this one
27  misstatement is insufficient to establish bad faith or improper purpose on the part of Plaintiffs.

28

*See Bisson-Dath*, 2012 WL 3025402, at *2 (noting conduct must be "egregious" to "rise to the level of bad faith"). Gallagher's statement that Gallagher did not know of *PussyVille* until months after Gallagher wrote the April 5, 2013 letter did not impact the Court's decision on the motion for disqualification. In fact, as noted above, the Court concluded that the April 5, 2013 letter did relate to *PussyVille*, and the Court disqualified Gallagher. *See* ECF No. 45. Defendants do not identify any other misrepresentations or bad conduct by Plaintiffs. *Cf. Frost-Tsuji Architects*, 2015 WL 5601853, at *7 (finding bad faith when plaintiff continued to seek discovery after summary judgment was adjudicated and filed numerous complaints against defendant with state and county agencies, even after the agencies clearly indicated the complaints were meritless); *Giganews, Inc.*, 2015 WL 1746484, at *9–10 (finding improper purpose when company only asserted copyrights as a tax right off, submitted inadequate takedown notices even after numerous admonitions, and had never taken any steps to avoid copyright piracy).

Further, in opposition to the instant motion, Plaintiff Epikhin submitted a declaration under penalty of perjury in which he states that Plaintiffs informed Gallagher that Plaintiffs had no access to the original *PussyVille* or *Cat Story*. ECF No. 91, Decl. of Evgeny Epikhin ¶ 7. According to Epikhin, Gallagher never informed Plaintiffs that original source material was required to register *PussyVille* and *Cat Story* and thus that Plaintiffs' copyright applications were not viable. *Id.* ¶¶ 7, 9–11. Epikhin further declares that Plaintiffs experienced a breakdown in communication with Gallagher and that Gallagher refused to provide copies of the copyright applications to Plaintiffs. *Id.* ¶¶ 10, 12. Lastly, Epikhin notes that Plaintiffs are Russian nationals with no knowledge of United States or California law. *Id.* ¶ 6. Plaintiffs' lack of familiarity with U.S. law and Gallagher's failure to inform Plaintiffs of the registration requirements suggest that Plaintiffs did not act in bad faith by bringing suit based on the asserted registrations.

Moreover, Gallagher discussed issues with the *Cat Story* deposits with a Copyright Office attorney before the Copyright Office registered *Cat Story*. *See* Taran Decl. Gallagher's communications with the Copyright Office and the Copyright Office's subsequent registration of *PussyVille* and *Cat Story* undermine the suggestion of bad faith. The Court concludes that this

factor weighs against granting attorney's fees.

### 5. Deterrence and Compensation

The fifth factor, the need for deterrence and compensation, weigh against granting attorney's fees. Developers of creative works "cannot afford to have obstructions placed in their path by claims of infringement that lack a reasonable chance of success because all along the plaintiff could not establish standing or another necessary element of infringement." *Oskar Sys., LLC v. Club Speed, Inc.*, 2010 WL 4235812, at *2 (C.D. Cal. Oct. 20, 2010); *see also Actuate Corp. v. Aon Corp.*, 2012 WL 3627595, at *1 (N.D. Cal. Aug. 21, 2012) (noting that a successful defense furthers the purpose of the Copyright Act "by protecting purported copyright holders from suits that are not tethered by sound facts or authorities"). However, "it is not the purpose of the Copyright Act to deter litigants from bringing potentially meritorious claims, even though those claims may be ultimately unsuccessful." *Minden Pictures, Inc.*, 2014 WL 1724478, at *8 (internal quotation marks omitted).

In the instant case, Plaintiffs' claims were not frivolous or objectively unreasonable, and Plaintiffs did not act in bad faith. Thus, the Court does not believe that Plaintiffs will attempt to re-assert copyright infringement claims based upon invalid copyright registrations. Accordingly, no specific deterrence of Plaintiffs is required. Additionally, plaintiffs acting in good faith and with potentially meritorious claims should not be deterred from seeking to protect their copyrights based on the fear of a large attorney's fees award should the Court find the copyright registration to be insufficient. *See id.* (noting courts should not deter plaintiffs with potentially meritorious claims); *Visa Int'l Serv. Ass'n*, 2005 WL 2007932, at *5 (noting the Copyright Act aims to incentivize plaintiffs to protect their copyrights).

Lastly, the need for compensation does not support an award of fees. "[D]efendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement." *Fogerty*, 510 U.S. at 527. An award of fees may provide such encouragement. *See id.* Here, however, such encouragement is unnecessary because Defendants had "ample incentive" to

14

Case No. 14-CV-04383-LHK
ORDER DENYING DEFENDANTS' MOTION FOR ATTORNEY'S FEES AND COSTS

vigorously defend *Cat Story*, which has been downloaded over one million times. *Bisson-Dath*, 2012 WL 3025402, at *3 (finding that a fee award did not further the purpose of the Copyright Act when defendants had incentive to defend its multibillion dollar franchise, and fee award could have a chilling effect).

### 6. Other Factors

Courts in this circuit also consider "whether the chilling effect of attorney's fees may be too great or impose an inequitable burden on an impecunious plaintiff." *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003). Thus, the Court must consider whether, in light of the losing party's financial condition, it would be inequitable to award attorney's fees. *Id.*

Plaintiffs assert that $200,000 in attorney's fees, "compounded by the financial losses that they have already suffered at the hands of Pomortsev," may render them insolvent. Opp. at 9. However, Plaintiffs do not put forward any evidence of their financial condition. Accordingly, this factor is neutral.

### 7. Balance of Factors and the Purposes of the Copyright Act

In sum, no factor favors the granting of fees. The degree of success obtained and Plaintiffs' financial condition are neutral, while objective reasonableness, frivolousness, Plaintiffs' motivation, and the need for compensation and deterrence weigh against an award of fees. Viewing these factors, the Court concludes that an award of fees does not further the purposes of the Copyright Act.

"The primary objective of the Copyright Act is to encourage the production of original literary, artistic, and musical expression for the good of the public." *Fogerty*, 510 U.S. at 524. The Copyright Act commonly accomplishes that purpose by incentivizing plaintiffs to protect their copyrights even though a successful defense may also promote that purpose. *See Visa Int'l Serv. Ass'n*, 2005 WL 2007932, at *5. The Ninth Circuit has affirmed that a defense on the merits furthers the purposes of the Copyright Act in a way that "a technical defense, such as. . . copyright registration requirements" does not. *Fogerty II*, 94 F.3d at 556, 560 (noting that prevailing parties are not automatically awarded attorney's fees because, in part, "copyright defendants do not

1  always reach the merits, prevailing instead on technical defenses").

2  As discussed above, Defendants prevailed on a technical defense, not on the merits of infringement. Indeed, Defendants prevailed on a defense—failure to satisfy copyright registration requirements—that the Ninth Circuit explicitly has stated is not one that necessarily furthers the purposes of the Copyright Act. *See id.* Such a defense does not create "breathing space within the confines of copyright" to create new works, such as the fair use defense. *See SOFA Entm't, Inc.*, 709 F.3d at 1280. Nor do Defendants explain how invalidating Plaintiffs' registrations on technical grounds serves to "encourage the production" of creative works. *See Fogerty*, 510 U.S. at 524. The Court notes that, while registration is a prerequisite to an infringement suit, registration is not a prerequisite to a valid copyright. *Kodadek*, 152 F.3d at 1211. The Court made no determination whether Plaintiffs have a valid copyright or whether Defendants infringed that copyright.

The Court concludes that it will not serve the purposes of the Copyright Act to deter plaintiffs who are acting neither unreasonably nor in bad faith from seeking to protect their copyrights based on fear of a large attorney's fees award should the Court find the copyright registration to be insufficient. *See Visa Int'l Serv. Ass'n*, 2005 WL 2007932, at *5 (noting the Copyright Act aims to incentivize plaintiffs to protect their copyrights). Accordingly, the Court DENIES Defendants' motion for attorney's fees and costs.

### IV. CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' motion for fees and costs.

**IT IS SO ORDERED.**

Dated: March 31, 2016

_____
LUCY H. KOH
United States District Judge

16
Case No. 14-CV-04383-LHK
ORDER DENYING DEFENDANTS' MOTION FOR ATTORNEY'S FEES AND COSTS